**UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

―――――――――――――――――――――――――
NATIONAL RESTAURANT ASSOCIATION )
et al.,                                                            )
                                                                       )
          Plaintiffs,                                             )
                                                                       )          **Civil Action Case No.**
                              v.                                   )          11-01116 (ABJ)
                                                                       )
HILDA L. SOLIS,                                          )
et al.,                                                            )
                                                                       )
          Defendants.                                         )
―――――――――――――――――――――――――)

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

**INTRODUCTION**

The Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., allows the employers

of "tipped employees" – those employees engaged in an occupation in which they customarily

and regularly receive more than $30 a month in tips – to use its employees' tips as a partial credit

toward their FLSA hourly wage requirement, a practice which is commonly referred to as taking

a "tip credit." 29 U.S.C. § 203(m), (t).  The statute specifically states that tip credits may be

taken only by those employers who provide their employees with adequate information about the

statutory requirements that govern tip credit under the FLSA.  See id. § 203(m).  In 2008, the

United States Department of Labor ("DOL"), acting pursuant to an express grant of rulemaking

authority, began the process of issuing a regulation addressing how an employer can meet its

statutory obligation to "inform" its tipped employees under Section 3(m) of the FLSA.  73 Fed.

Reg. 43654, 43659, 43668 (July 28, 2008).  In 2011, that process was completed with the

publication of a final rule which flowed logically and directly from the 2008 Notice of Proposed

Rulemaking.  See Updating Regulations Issued Under the Fair Labor Standards Act, Final Rule ("Final Rule"), 76 Fed. Reg. 18832 (Apr. 5, 2011).

Several employer associations have now brought this action claiming, primarily, that DOL's regulation violates the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et. seq. They argue, in essence, that because the agency did not announce in the initial request for comments the precise terms of the final rule which was ultimately adopted on the basis of those comments, the government did not engage in adequate notice and comment rulemaking.

Plaintiffs' reading of the APA's requirements is incorrect.  A final rule need not track the language of a proposed rule in order to be legitimate.  Rather, if the final rule is a logical outgrowth of what was proposed, the government has met its obligations under the "notice and comment" provisions of the APA.  See Conn. Light & Power Co. v. Nuclear Regulatory Comm'n., 673 F.2d 525, 533 (D.C. Cir. 1982).  Because the rule at issue here easily meets that test, Plaintiffs' claim in that regard must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiffs are similarly misguided in their other efforts to claim that the Department's final rule is invalid.  The Department acted in accordance with an explicit delegation of rulemaking authority from Congress, and, following notice and comment,  set forth a reasonable rule concerning the duty to inform employees about the tip credit provisions in accordance with the express terms of Section 3(m) of the FLSA.  That rule is entirely consistent with the terms of the statute under which it was promulgated.  Accordingly, the Department's final rule is entitled to deference, and should be deemed consistent with the FLSA and should be validated.

So, too, Plaintiffs have failed to state any cognizable claims in their allegations concerning the compliance costs of the final rule.  Neither of the Executive Orders indentified by the Plaintiffs in support of such claims is subject to judicial review under the APA, see Air

Transport Association v. Federal Aviation Administration, 169 F.3d 1, 8-9 (D.C. Cir. 1999), and

the Regulatory Flexibility Act, 5 U.S.C. § 604, on which Plaintiffs rely in this regard, does not

apply because the Department properly certified, pursuant to 5 U.S.C. § 605(b), that the final rule

would not "have a significant impact on a substantial number of small entities." In sum,

Plaintiffs claims concerning the economic burden of the new rule must also be dismissed in

accordance with Rule 12(b)(6).

## STATUTORY AND REGULATORY AUTHORITY

The FLSA was passed by Congress in 1938 as remedial legislation intended to benefit

and protect workers.  See Barrentine v. Arkansas-Best Freight Systems, Inc., 450 U.S. 728, 739

(1981); Rutherford Food Corp. v. McComb, 331 U.S. 722, 727 (1947).  One of the primary

purposes of the FLSA is to protect workers from "substandard wages and oppressive working

hours." Barrentine, 450 U.S. at 739; see 29 U.S.C. § 202(a), (b) (stating Congress' intent

eliminate substandard labor conditions). "[T]he FLSA was designed to give specific minimum

protections to *individual* workers and to ensure that *each* employee covered by the Act would

receive "'[a] fair day's pay for a fair day's work'" and would be protected from "the evil of

'overwork' as well as 'underpay.'" Barrentine, 450 U.S. at 739 (quoting Overnight Motor

Transp. Co. v. Missel, 316 U.S. 572, 578 (1942) (quoting 81 Cong. Rec. 4983 (1937) (message

of President Roosevelt))) (emphasis in the original).

**The Tip Credit Requirements**

Section 3(m) of the FLSA provides wage requirements unique to tipped employees by

setting forth the terms and conditions by which an employer may credit the tips of those

employees toward the hourly minimum wage requirement, a practice which is commonly

referred to as taking a "tip credit."[1] Under Section 3(m) of the FLSA, an employer may take a tip

---

[1] Section 3(m) refers to the tip credit provision in Section 203(m) of the FLSA, 29 U.S.C. §
203(m).  As the Department of Labor and both employees and employers alike – to include
Plaintiffs in this case – most often refer directly to Section 3(m) of the FLSA, rather than to its
codification in the U.S. Code, the defendants will likewise refer to Section 3(m) of the Act when
discussing the tip credit within its brief.

credit if the following five requirements are satisfied: (1) the employer pays tipped employees a cash wage of at least $2.13 per hour; (2) the tipped employees each receive an additional amount in tips that, when combined with the cash wage paid by the employer, equals the statutory minimum wage, which is currently $7.25 per hour[2]; (3) the additional amount claimed by the employer on account of tip credit cannot exceed the value of the tips actually received by the tipped employee; (4) the tipped employee must have been informed by the employer of the provisions of Section 3(m); and (5) all tips are retained by the employee, with the exception of those received in cases involving the pooling of tips among employees who customarily and regularly receive tips.

At issue in this case is the fourth tip credit requirement – the obligation of employers to inform their tipped employees of the provisions of Section 3(m) before they can lawfully credit the tips of those employees toward satisfaction of the minimum wage.  If employers fail to inform their tipped employees about the tip credit provisions of Section 3(m), then no tip credit can be taken, and the employer is liable for the full minimum wage.  Reich v. Chez Robert, Inc., 28 F.3d 401, 403 (3d Cir. 1994); Martin v. Tango's Restaurant Inc., 969 F.2d 1319, 1322-23 (1st Cir. 1992).

The first tip credit provisions were added to Section 3(m) in 1966 as part of a series of amendments that extended the coverage of the FLSA to the hotel and restaurant industries.  See Pub. L. No. 89-601, §§ 101(a), 201 (a), 80 Stat. 830 (1966).  See also Usery v. Emersons Ltd., No.76-11-A1976 WL 1668 at *2 (E.D. Va. Nov. 23, 1976) (discussing the 1966 Amendments to the FLSA).  Those amendments also created the "tip credit" provision to permit employers to use a limited portion of their employees' tips as a partial credit against their minimum wage obligations.[3] The following year, the Department updated it regulations to reflect the 1966

---

[2] The current minimum wage is provided at 29 U.S.C. § 206(a)(1)(C).

[3] After the 1966 amendments, Section 3(m) of the FLSA read as follows:

> In determining the wage of a tipped employee, the amount paid such employee by his employer shall be deemed to be increased on account of tips by an amount determined by the employer, but not by an amount in

Amendments to the FLSA, and published its first regulation pertaining to tip credit, 29 CFR § 531.59.[4]

Approximately seven years later, in 1974, Congress again passed amendments pertaining to the tip credit.  See Pub. L. No. 93-259, § 13, 88 Stat. 55 (1974).  Specifically, Congress amended Section 3(m) of the Act to provide: (1) that an employer must inform its employees of the provisions of that subsection if it intends to take a tip credit; (2) that the tip credit is not available unless employees retain all tips; and (3) that pooling of tips is authorized "among employees who customarily and regularly receive tips." See id.[5]

---

> excess of 50 per centum of the applicable minimum wage rate, except that in the case of an employee who (either himself or acting through his representative) shows to the satisfaction of the Secretary that the actual amount of tips received by him was less than the amount determined by the employer as the amount by which the wage paid him was deemed to be increased under this sentence, the amount paid such employee by his employer shall be deemed to have been increased by such lesser amount.

Pub. L. No. 89-601, § 101(a), 80 Stat. 830 (1966).

[4] Prior to the completion of the rulemaking at issue in this case, 1967 was the last time the Department updated its Wage and Hour Regulations to address tip credit.

[5] After the 1974 amendments, the tip credit provisions of section 3(m) read as follows:

> In determining the wage of a tipped employee, the amount paid such employee by his employer shall be deemed to be increased on account of tips by an amount determined by the employer, but not by an amount in excess of 50 per centum of the applicable minimum wage rate, except that the amount of the increase on account of tips determined by the employer may not exceed the value of tips actually received by the employee.  The previous sentence *shall not apply with respect to any tipped employee unless (1) such employee has been informed by the employer of the provisions of this subsection and (2) all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.*

Pub. L. No. 93-259, § 13, 88 Stat. 55 (1974) (emphasis added).  This underlined language from the 1974 amendments to Section 3(m) is the same as that found in the current version of the law.  Although Section 3(m)'s tip credit provision has been amended since 1974 on several occasions - - in 1977 (Pub. L. No. 95-151, § 3(b), 91 Stat. 1245 (1977)); 1989 (Pub. L. No. 101-157, § 5, 103 Stat. 938, 941 (1989)); and 1996 (Pub. L. No. 104-188, § 2105(b), 110 Stat. 1755, 1929 (1996)) -

Senate Report 93-690, which accompanied the 1974 amendments, states in part:

The tip credit provision of S.2747 is designed to insure employer responsibility for proper computation of the tip allowance and *to make clear that the employer is responsible for informing the tipped employee of how such employee's wage is calculated. Thus the bill specifically requires that the employer must <u>explain</u> the tip provision of the Act to the Employee* and that all tips received by such employee must be retained by the employee. S. Rep. No. 93-690 (1974) (emphasis added).

The Secretary of Labor is responsible for the administration and enforcement of the FLSA.  <u>See</u> 29 U.S.C. §§ 204(a)-(b), 216(c), 217.  More specifically, Congress has expressly vested the Department of Labor with broad authority to prescribe "rules, regulations, and orders" implementing the 1974 Amendments.  Pub. L. 93-259, § 29(b), 88 Stat. 55.  Although the requirement in Section 3(m) that employers inform their tipped employees of the tip credit provisions has been on the books since the 1974 Amendments, the Department of Labor did not initiate any rulemakings regarding this requirement for some time following their passage.  In July of 2008, the Department announced its intention to update its Wage and Hour Regulations to conform with current law, as established through numerous amendments to the FLSA and decades of court decisions interpreting the Act.  <u>See</u> Updating Regulations Issued Under the Fair Labor Standards Act, Notice of Proposed Rulemaking and Request for Comments ("NPRM"), 73 Fed. Reg. 43654 (July 28, 2008).  In its July 2008 NPRM, the Department signaled that, in accordance with the authority granted to the Secretary in the 1974 Amendments, it planned to publish a new rule prescribing how employers should comply with Section 3(m) with respect to their obligation to ensure that their tipped employees are informed about the tip credit.  <u>See</u> <u>id.</u> at

---

- these amendments changed only the applicable percentage of employees' tips that could be taken as a tip credit against an employer's cash wage obligations.  The cash wage required to be paid by an employer electing the tip credit was "frozen" by the 1996 amendments to Section 3(m) at $2.13 an hour.

43658-60.

## The July 2008 NPRM

In its NPRM, the Department stated that its rulemaking was intended to revise its FLSA

regulations that had become "out of date because of subsequent legislation and court decisions."

73 Fed. Reg. at 43654.  More specifically, the Department explained that its proposed revisions

were intended to conform the regulations to FLSA amendments passed since 1967 and requested

comment on "all issues related to this proposed rulemaking."  See id. at 43654-55.   As part of

this omnibus rulemaking effort, the Department focused on the tip credit aspect of the statute.

The agency proposed publishing a new rule – 29 CFR § 531.59(b) – to set forth its proposed

interpretation of the statutory phrase, "informed by the employer of the provisions of this

subsection," as expressly required by the 1974 Amendments to Section 3(m).  See NPRM, 73

Fed. Reg. at 43668-60.  The Department's NPRM proposed to require employers to

"communicate to employees that the employer intends to treat tips as satisfying part of the

employer's minimum wage obligation."  Id. at 43668.  The language of the rule as proposed in

the 2008 NPRM would have provided in relevant part:

> Pursuant to section 3(m), an employer is not eligible to take the tip credit unless it has
> informed its employees that it intends to avail itself of the tip wage credit.  Such notice
> shall be provided in advance of the employer's use of the tip credit; the notice need not
> be in writing, but must communicate to employees that the employer intends to treat tips
> as satisfying part of the employer's minimum wage obligation.

Id.  Thus, the rule initially proposed by the Department did not specify the kind of information

that employers might provide when informing their tipped employees about the provisions of

Section 3(m), although it certainly articulated an employer's general obligation to communicate

to the relevant employees its intention to take the credit.

### Public Comments

In its request for comment, the Department of Labor specifically asked for "comments on

all issues related to [the] notice of proposed rulemaking."  Id. at 43655.  Consequently, business

associations, unions, labor and employment practitioners, and labor advocacy organizations all submitted comments on the Department's proposed regulations,  including the Department's specific proposal to issue a new rule prescribing how employers must ensure that their tipped employees are "informed" of the tip credit provisions.  See Final Rule, 76 Fed. Reg. at 18842-44. While organizations representing business interests and employers, such as the Chamber of Commerce and Littler Mendelson, P.C. (the law firm representing Plaintiffs in this case), submitted comments in support of the Department's proposed interpretation of Section 3(m), numerous groups representing employees expressed strong opposition.  See id. at 18842-43.

Labor groups argued that by proposing that employers need not explain the tip credit provisions to their tipped employees, the Department had advanced an impermissibly narrow interpretation of Section 3(m), which conflicted with the statutory language, its legislative history, and the underlying purposes of the FLSA as remedial legislation intended to protect workers.  See, e.g., Id. at 18843; Administrative Record ("AR") at 00033-37, 00066-67, 00092-97, 116, 124-126, 146; 257-262.  Many of these commenters argued that the statutory language in Section 3(m), which expressly provides that employees must be "informed" by their employers of the provisions of that subsection, necessarily obligates employers to provide some level of explanation to their employees regarding the specific statutory requirements of tip credit. See, e.g.,  AR at 00036-37, 00066-67, 00096-97, 000124-126.  Additionally, commenters pointed to a number of federal court decisions in which courts held that employers were barred from claiming a tip credit when they had not adequately informed their employees of the provisions of Section 3(m). See, e.g., AR 00036-37, 00066-67, 00096-97, 000117-25.  A number of employee advocacy organizations urged the Department to mandate that employers provide their employees with a written explanation of the tip credit requirements.  See, e.g. 000067, 000281.  These groups stressed that having the information in writing would help employees to better understand the tip credit requirements and would minimize litigation risks to employers. Overall, the weight of the comments submitted stressed that the Department of Labor's proposed

rule construing Section 3(m) was unjustifiably narrow.[6]

**The Final Rule: 29 CFR § 531.59(b)**

In light of the comments submitted in response the NPRM, the Department decided to revisit its proposed interpretation of Section 3(m) with regard to "the level of explanation that employers must provide when informing tipped employees about the tip credit." Id. at 18844.  In so doing, the Department carefully reexamined the express terms of the statute and its legislative history, and concluded, consistent with weight of the comments submitted, that "notice of the specific provisions of 3(m) is required to adequately inform the employee of the requirements of the tip credit." Id.  Accordingly, the Department made the necessary revisions to the rule to ensure that employers adequately inform their employees of the specific tip credit provisions contained in Section 3(m).  See id.  The final rule – which is now 29 CFR § 531.59(b) – was published on April 5, 2011; it reads in relevant part:

> Pursuant to section 3(m), an employer is not eligible to take the tip credit unless it has informed its tipped employees in advance of the employer's use of the tip credit of the provisions of section 3(m) of the Act, i.e.: The amount of the cash wage that is to be paid to the tipped employee by the employer; the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee; that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

29 CFR § 531.59(b). Although the Department ultimately agreed with the majority of commenters by concluding that employers must inform their tipped employees of the specific

---

[6] The time period for filing written comments was originally scheduled to close on September 11, 2008.  In response to a number of requests for additional time, the Department, on August 22, 2008, extended the time period for filing written comments by 15 days to September 26, 2008. 73 Fed. Reg. 49621 (Aug. 22, 2008).

provisions of Section 3(m) before those employers may lawfully claim a tip credit, the

Department nonetheless rejected calls from many employee groups to mandate that employers

explain those requirements in writing.  See id.

The Final Rule went into effect on May 5, 2011.  See 76 Fed. Reg. at 18832; 29 CFR §

531.59.  Several months later, on July 16, 2011, Plaintiffs filed suit in this Court challenging the

legal sufficiency of the Department's rulemaking under the APA.  See Complaint.

## ARGUMENT

Under the Administrative Procedure Act, a Court may not disturb an agency rule "unless

it is procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the

statute." United States v. Mead Corporation., 533 U.S. 218, 227 (2001) (citations omitted); Nat'l

Res. Def. Council, Inc. v. Daley, 209 F.3d 747, 752 (D.C. Cir. 2000).  Here, the tip credit notice

rule was adopted by the Department is a logical outgrowth of the notice and comment process

and one that provides a reasonable interpretation of Section 3(m) pursuant to an express

Congressional authorization of rulemaking authority.  Moreover, Plaintiffs have failed to assert

any judicially reviewable claims with respect to their allegations that the Department failed to

adequately compliance costs associated with the final rule.  Accordingly, Defendants are entitled

to dismissal of all of Plaintiffs' claims.

**A.   The July 2008 NPRM Provided Sufficient Notice of the Department's Intention
to Publish a New Rule Regarding the Obligation of Employers to Inform Tipped
Employees about Tip Credit Pursuant to Section 3(m) of the FLSA.**

The APA requires that an agency publish a notice of proposed rulemaking, including

"either the terms or substance of the proposed rule or a description of the subjects and issues

involved." 5 U.S.C. § 553(b)(3).  This language, on its own, makes clear enough that the fit

between the terms of a proposed rule and the particulars of the final rule that follows public

comment on the proposal need not be very close for an agency to comply with the APA's notice

and comment requirements.  Courts have made the point even clearer; they have "generally interpreted this to mean that the final rule the agency adopts must be a logical outgrowth of the rule proposed."  Long Island Care at Home, Ltd. v. Coke, 551 U.S. 158, 174 (2007).

Informal rulemaking under the APA is not a static process, and so government agencies are not required to "renotice changes that follow logically from or that reasonably develop the rules it proposed originally.  Otherwise the comment period would be a perpetual exercise rather than a genuine interchange resulting in improved rules."  Conn. Light & Power Co., 673 F.2d at 533 (citations omitted).  Indeed, "[t]he whole rationale of notice and comment rests on the expectation that the final rules will be somewhat different-and improved-from the rules originally proposed by the agency."  Trans-Pacific Freight Conference v. Fed. Mar. Comm'n, 650 F.2d 1235, 1249 (D.C. Cir. 1980), cert. denied, 451 U.S. 984 (1981).  There is no requirement that an agency "select a final rule from among the precise proposals under consideration during the comment period,"  Sierra Club v. Costle, 657 F.2d 298, 352 (D.C. Cir. 1981), and it is not uncommon for a final rule to contain new provisions appearing for the first time.  See Health Ins. Ass'n of America, Inc. v. Shalala, 23 F.3d 412, 421 (D.C. Cir. 1994), cert. denied, 513 U.S. 1147 (1995).  All that the APA requires is that the "'germ' of the outcome is found in the original proposal."  Nat'l Ass'n of Psychiatric Health Sys. v. Shalala, 120 F. Supp. 2d 33, 39 (D.D.C. 2000).  In sum, the final rule adopted by an agency need not match the original proposal and "indeed must not if the record demands a change."  Kooritzky v. Reich, 17 F.3d 1509, 1513 (D.C. Cir. 1994) (citations omitted).

In this case, the NPRM issued by the Department in July of 2008 proposed to require employers to "inform[ ] its employees that it intends to avail itself of the tip wage credit" and stated that the notice "must communicate to employees that the employers intends to treat tips as satisfying part of the employer's minimum wage obligation" without offering any detail as to the specific information that must be conveyed.  73 Fed. Reg. at 43668.  Thus the proposed rule addressed what it means to "inform" under the FLSA, and "clearly revealed both the precise 'subject matter' and the 'issues' involved as required by the APA."  Conn. Power & Light Co.,

673 F.2d at 533 (citing 5 U.S.C. § 553(b)(3)).  The notice clearly evinced the Department's

intent to issue a rule interpreting Section 3(m) with respect to the statutory obligation of

employers to ensure that their employees are informed of the tip credit provisions within that

subsection.  The preamble of the NPRM included a detailed discussion of the tip credit,

including the language of the statute, its history including the 1974 Amendments, and relevant

case law.  See 73 Fed. Reg. at 43658-59.  The Department requested comments on all issues

related the NPRM.  Id. at 43655.

　　　After considering the comments submitted regarding its tip credit proposal, the

Department revisited its proposal and modified "its interpretation of the level of explanation that

employers must provide when informing tipped employees about the tip credit." Final Rule, 76

Fed. Reg. at 18844.  While the final rule included more detail regarding the information

employers should communicate to their tipped employees – those details were derived directly

from the statutory provisions of Section 3(m).  The NPRM gave ample notice that the question of

how to interpret Section 3(m)'s requirement to inform tipped employees of the provisions of that

subsection was squarely in play.  Moreover, the Department's change in course from its

proposed interpretation of Section 3(m)'s mandate was entirely consistent with the Department's

stated purpose of the rulemaking, which was to update its regulations to reflect current FLSA

amendments.  See NPRM 73 Fed. Reg. at 43654. As a result, the final rule was a logical

outgrowth of the NPRM because the changes made by the Department flowed directly from the

dynamic exchange that the notice and comment process affords.  Consequently, Plaintiffs'

primary claim must be rejected.

### B.   The Department's Regulations Reasonably Interpret Section 3(m) of the FLSA.

　　　The new tip credit rule is entitled to controlling deference under Chevron U.S.A. Inc. v.

Natural Resources Defense Council, Inc., 467 U.S. 837 (1984) and its progeny because Congress

expressly delegated authority to the Department to prescribe regulations implementing the 1974

Amendments to the FLSA and the final rule issued by the Department is based on a reasonable

and permissible construction of Section 3(m).  See Coke, 551 U.S. 165; Mead, 533 U.S. at 227.

When Congress has issued an express delegation of rulemaking authority to an agency to

elucidate the terms of a statute, the agency's interpretation is binding on the courts unless it

unreasonable or manifestly contrary to the statute.  See Mead, 533 U.S. at 227.  As the Supreme

Court emphasized in Mead, an "express congressional authorization[] to engage in the process of

rulemaking" is a strong indication that Congress intended for the defer to the agency's

interpretation of a statutory provision. 533 U.S. at 229.  Recently, in Coke, the Court reaffirmed

Mead in holding that Courts should defer to the Department's interpretation of the FLSA, when,

as here, the Department has focused directly on the issue and used full notice-and-comment

procedures to promulgate a rule within its express statutory grant of rulemaking authority under

the 1974 Amendments.  See Coke, 551 U.S. at 173-174.

   In this case, the Department fully focused on the issue of how employers should inform

their employees about the tip credit, and used full notice and comment procedures to exercise its

statutory authority to issue a reasonable rule interpreting the Section 3(m)'s language providing

that the "the tip credit provisions shall not apply with respect to any tipped employee unless such

employee informed by the employer *of the provisions of this subsection*." 29 U.S.C. § 203(m)

(emphasis added).  The provisions of Section 3(m), as currently written, essentially includes five

tip credit requirements.  First, the statute requires that cash wage paid to a tipped employee "shall

not be less than the cash wage paid required to be paid such an employee on August 20, 1996 [or

$2.13 per hour]."  Id.  Consistent with that requirement, the new rule provides that the employer

should inform the tipped employee "of the amount of the cash wage that is to be paid to the

tipped employee by the employer." 29 CFR § 531.59(b).

   Second, the statute provides that the employer must pay the tipped employee "an

additional amount on account of tips [currently $5.12]," which when combined with the cash

wage, equals the minimum wage [currently $7.25 per hour].  29 U.S.C. § 203(m).  Likewise, the

rule provides that the employer should communicate to the tipped employee "of the additional

amount by which the wages of the tipped employee are increased on account of the tip credit

claimed by the employer, and clearly reminds employers that the "credit allowed on account of

tips may be less than permitted by statute (minimum wage required by section 6(a)(1) minus

$2.13); it cannot be more." 29 CFR § 531.59(b).

Third, Section 3(m) of the statute makes clear that the "the additional amount on account

of tips may not exceed the value of the tips actually received by an employee."  29 U.S.C. §

203(m).  Likewise, the Department's rule states precisely that employers should communicate

that the amount they claim "may not exceed the value of the tips actually received by the

employee." 29 CFR § 531.59(b).

Fourth, the statute provides that the employee must retain all tips except for in cases

involving the "pooling of tips amount employees who customarily and regularly receive tips." 29

U.S.C. § 203(m).  Similarly, the rule states precisely that employees should be informed "that all

tips received by the tipped employee must be retained by the employee except for a valid tip

pooling arrangement limited to employees who customarily and regularly receive tips" 29 CFR §

531.59(b).

Fifth, and finally, Section 3(m) requires that the tip credit provisions "shall not apply with

respect to any tipped employee unless such employee has been informed by the employer of the

provisions of this subsection." 29 U.S.C. § 203(m).  The new rule again tracks the language of

the statute almost verbatim, providing that the employer should communicate to the tip employee

that the "tip credit shall not apply to any employee who has not been informed of [the]

requirements in this section." 29 CFR § 531.59.

In sum, the operative regulatory language within the Department's new tip credit rule

simply incorporates the five requirements of Section 3(m).  The degree of explanation contemplated by the new rule is no more than is needed to ensure that tipped employees are "informed" of those provisions in accordance with the statute's mandate.  The Department's application of the statute is all the more reasonable to the extent it squares with applicable legislative history.  See e.g., Food and Drug Administration v. Brown and Williamson Tobacco Corporation, 529 U.S. 120, 146-156 (examining legislative history in reviewing agency interpretation of statute).  The reading of the statutory language at issue here does just that, as it reinforced by Senate Report 93-690, in which Congress noted that employers should "explain" the tip credit provisions to their employees.  S. Rep. No. 93-690 at 42-43 (1974).

The Department's reasonable interpretation of an ambiguous statutory term through a legislative rule is controlling, even if a court has interpreted the same term differently, provided the court's prior decision does not "unambiguously foreclose the agency's interpretation."  Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs., 545 U.S. 967, 982-83 (2005).  Here, far from foreclosing Labor's position, the decisional law affirmatively supports the Department's decision to adopt the regulation at issue.  For instance, the First Circuit opined in Martin v. Tango's Restaurant that the provision requires "at the very least notice to employees of the employer's intention to treat tips as satisfying part of the employer's minimum wage obligations" and observed that the provision "could easily be read to require more." 969 F.2d at 1322.  Numerous other courts have cited Tango's Restaurant with approval. See, e.g., Reich, 28 F.3d at 403; Copantitla v. Estiatorio, Inc., --- F. Supp. 2d ----, No. 09 Civ. 1608 (RJH), 2011 WL 2127808 *24-26 (S.D.N.Y. May 27, 2011) (collecting and discussing cases regarding employer duty to inform employees about provisions of Section 3(m)).  Moreover, Kilgore v. Outback Steakhouse of Florida Inc., which is relied upon by Plaintiffs, is largely consistent with the Department's interpretation of Section 3(m) because the employees in that case received a

written packet that included the "Outback Tip Policy," which quoted Section 3(m) and were

required to attend training in which management "explained" tip credit to the employees.  See

160 F.3d 294, 299 (6th Cir. 1998).  And although that court held that "informing" an employee

of the requirements of the statute is sufficient even absent further "explanation" of the statute, in

practical terms that holding is not inconsistent with the regulation that the Department adopted.

In any event, the agency expressly addressed the Kilgore decision in its final rulemaking, Final

Rule, 76 Fed. Reg. at 18843-44, and noted that to the extent the court in that case, and others

noted by the agency in its Federal Register publication, did actually rule that something less than

what the final rule would require is sufficient to satisfy the tip credit statute (which might, in

fact, not be the case), the Department rejected such a reading of the statute.  Id.

Finally, as a remedial statute, the FLSA should be construed liberally in favor of its

intended beneficiaries, i.e., workers.  See Laffey v. Northwest Airlines, Inc., 567 F.2d 429, 461

(D.C. Cir. 1977), accord Klem v. Cnty. of Santa Clara, Cal., 208 F.3d 1085, 1089 (9th Cir. 2000)

(stating that the FLSA should be broadly construed "to apply to the furthest reaches consistent

with Congressional direction") (internal quotations omitted).  See also Morrison v. Int'l

Programs Consortium, Inc., 253 F.3d 5, 10 (D.C. Cir. 2001) (stating that "employee" is defined

broadly under the FLSA "in accordance with the remedial purpose of the Act") (quoting Brock v.

Superior Care, Inc., 840 F.2d 1054, 1058 (2d Cir. 1988)); Real v. Driscoll Strawberry Assocs.,

Inc., 603 F.2d 748, 754 (9th Cir. 1979) (courts define "employer" and "employee" under the

FLSA broadly "to effectuate the broad remedial purposes of the Act").

Because the Department's reading of the rule is consistent with the remedial purposes of

the FLSA, and is based on, among other appropriate considerations, the language of the statute,

its statutory development and its legislative history, and because that understanding of the statute

is manifestly reasonable, the agency's view is not only entitled to deference but should be

upheld.  See Coke, 551 U.S. at 173-175; National Cable, 545 U.S. at 980; Mead, 533 U.S. at 227-30.

**B.   Defendants' Arguments Regarding Compliance Costs of the New Tip Credit Rule are Without Merit.**

The third and fourth counts found in Plaintiffs' Complaint assert that the Department violated Executive Orders Nos. 12866, 13563, and the Regulatory Flexibility Act by failing to adequately consider the economic burden of its new tip credit rule on regulated industries.  These claims are without merit and should be dismissed.

As for the Executive Orders, they simply do not create enforceable rights.  That is clear, to begin, because each of the Executive Orders relied on by the Plaintiffs says so.  The first of the Orders, entitled "Regulatory Planning and Review," was issued generally to reform the Executive Branch's system of developing, reviewing, and promulgating regulations. Exec. Order No. 12866, 58 Fed. Reg. 51735 (Sept. 30, 1993). More specifically, among the stated objectives of the Order are "to enhance planning and coordination with respect to both new and existing regulations" and "to make the process more accessible and open to the public." Id. at Preamble. The Order does so, in essence, by articulating an intra-Executive Branch process for the review of regulations.  It contains the following language:

> This Executive order is intended only to improve the internal management of the Federal Government and does not create any right or benefit, substantive or procedural, enforceable at law or equity by a party against the United States, its agencies or instrumentalities, its officers or employees, or any other person.

Id. § 10.

The second Executive Order on which Plaintiffs rely, Executive Order No. 13563 ,is similarly entitled Improving Regulation and Regulatory Review. 76 Fed. Reg. 3821 (Jan. 18, 2011). It is based on the same general principles as the earlier Order, as outlined in it's Section 1. See Id.  In fact, its Section 1(b) states that "[t]his order is supplemental to and reaffirms the principles, structures, and definitions governing contemporary regulatory review that were

established in Executive Order 12866 of September 30, 1993." Id.  Likewise, it focuses on streamlining and improving the intra-governmental process of developing regulations.  And just as the earlier order did, this one says that "[t]his order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person."  Id. § 7(d).

    The fact that the Plaintiffs may not so sue over an alleged violation of these Executive Orders is not a function only of the explicit terms of the Orders themselves.  The D.C. Circuit has held that these kinds of orders pertaining to the internal management of the federal government are not subject to review under the APA.  In Air Transport Association of America, 169 F.3d at 8-9, the D.C. Circuit addressed an APA claim in which plaintiffs alleged violations of Executive Order No. 12893, 59 Fed. Reg. 4233 (Jan. 26, 1994).  That Order pertains to the processes by which agencies make decisions in connection with infrastructure investment. Although that order also describes itself as "intended only to improve the internal management of the executive branch," it contains mechanisms for involvement of the public in the type of decision-making it discusses.  Executive Order No. 12893 §§ 7, 2(c), 59 Fed. Reg. 4233, 4233, 4235 (Jan. 26, 1994). Nonetheless, it contains a legal disclaimer that was virtually identical to those found in the two orders at issue here.  See id. § 7; Air Transport Assoc., 169 F.3d at 8.  The Court of Appeals credited the disclaimer and summarily rejected plaintiffs' efforts to obtain judicial review under the auspices of the APA.  The Court stated: "Although petitioner indicated that it does not seek to assert rights under the Order but is merely referencing it to provide evidence of arbitrary and capricious nature of the FAA's decision, such an argument is nothing more than indirect-and-impermissible-attempt to enforce private rights under the order," which the court held the plaintiff could not do. Id. at 8-9.  On the strength of the D.C. Circuit's opinion in that case, this should apply the express disclaimers found in Executive Orders No. 12866 and 13563, and thereby reject Plaintiffs efforts to obtain judicial review of the Department's compliance with those internal executive branch directives.

By the same token, Plaintiffs may not rely on the Regulatory Flexibility Act because a rulemaking is exempt from the provisions of that Act when, as in this case, the agency certifies "that the rule will not, if promulgated, have a significant economic impact on a substantial number of small entities." 5 U.S.C. § 605(b). See, e.g., Cement Kiln Recycling v. EPA, 255 F.3d 855 (D.C. Cir. 2001); Nat'l Ass'n for Home Care v. Shalala, 135 F. Supp. 2d 161, 166 (D.D.C. 2001). Here, the Department issued the required certification at the time final rule was published. See 76 Fed. Reg. at 18853; AR at 000002.[7] As the D.C. Circuit has conclusively held:

> the [Regulatory Flexibility]Act's requirements are "[p]urely procedural." U.S. Cellular Corp. v. FCC, 254 F.3d 78, 88 (D.C.Cir.2001); see also Aeronautical Repair Station Ass'n, Inc. v. FAA, 494 F.3d 161, 178 (D.C.Cir.2007) ("The RFA is a procedural statute setting out precise, specific steps an agency must take."). Though it directs agencies to state, summarize, and describe, the Act in and of itself imposes no substantive constraint on agency decisionmaking. In effect, therefore, the Act requires agencies to publish analyses that address certain legally delineated topics. Because the analysis at issue here undoubtedly addressed all of the legally mandated subject areas, it complies with the Act. Cf. U.S. Cellular Corp., 254 F.3d at 88–89 ("Petitioners dispute neither that the Commission included a FRFA [final regulatory flexibility analysis] ... nor that this statement addresses all subjects required by the RFA.").

National Telephone Co-op. Ass'n v. F.C.C., 563 F.3d 536, 540 (D.C. Cir. 2009). While that case arose under Section 604 of the statute which requires a fairly full-blown analysis, while in the present case only a minimal statement was required because of the agency's conclusion that its rule would have no significant impact on a substantial number of small entities, the fact remains that the agency complied with the procedural requirements of the Act. Under National Telephone Co-op Ass'n, that is enough to warrant dismissal of this claim. The Regulatory Flexibility Act is a procedural statute; as long as an agency complies with the Act by taking the

---

[7] The certification included in the Federal Register publishing the final rule on this point notes that a similar certification was made at the time of the Notice of Proposed Rule Making. See 76 Fed. Reg. at 18853. Although that earlier certification is not in the Administrative Record (because it appears to have been misfiled, or otherwise cannot be located), that is of no moment. The Act makes quite plain that the exemption of Section 605 applies whether the appropriate certification is made at the time of a rule's proposal or at the time of its final publication. 5 U.S.C. § 605(b). The final certification is in the Record. See AR at 0000002.

procedural steps required under that Act, a plaintiff cannot obtain relief for a violation.

Therefore, Plaintiffs' claim under the Regulatory Flexibility Act must be dismissed.

**D.      The Final Rule Constitutes a Reasonable Exercise of Department's Expressly Delegated Rulemaking Authority under the FLSA.[8]**

Under settled law, judicial review of an agency rule is "necessarily defential."

Consumer Elecs. Ass'n v. F.C.C., 347 F.3d 291, 300 (D.C. Cir. 2003).  "The scope of review

under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its

judgment for that of the agency."  Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mut. Auto. Ins.

Co., 463 U.S. 29, 43 (1983).  As the Supreme Court recently reaffirmed, review under the

Arbitrary and Capricious standard is very deferential, and therefore a Court should not vacate an

agency's decision unless it

> "has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

Nat'l Ass'n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 658 (2007) (quoting State

Farm, 463 U.S. at 43.)

The final rule at issue here – 29 CFR 531.50(b) – should not be disturbed in this case

because it is a reasonable interpretation of Section 3(m), promulgated only after careful

consideration of dozens of public comments and adherence to all applicable legal and procedural

requirements.  The Department exercised express rulemaking authority given to it by Congress

and engaged the public in a full-bore notice and comment process.  The Department carefully

sifted through competing viewpoints and analysis to arrive at a decision to adopt a rule which is

---

[8] It is hardly clear that Plaintiffs intended to mount a separate claim that, separate and apart from any "notice and comment" question or any issue as to whether the Department's rule squares with the statute, it is also simply arbitrary and capricious.  Indeed, the congruence of the rule with the terms of the statute makes such an argument highly implausible.  Nonetheless, in the interest of completeness, the present argument is included in this Memorandum.

entirely consistent not only with the terms of the relevant statute and Congress' intent to ensure that employees are informed of the provisions of Section 3(m) pertaining to tip credit, as shown above, but also with the weight of the public comments and with a well-reasoned attempt to ensure compliance with applicable legislative direction.  Thus, as the Department's Federal Register notice published along with the final rule makes abundantly clear, DOL took care to think through statutory and policy considerations relevant to the rule, analyzed applicable caselaw, and decided on an appropriate course of action.  76 Fed. Reg. at 18842-44.  By the same token, both the Administrative Record and the Federal Register publication demonstrate how fulsome the Labor Department's treatment was of the comments that it received.  The record establishes quite conclusively that far from relying on impermissible factors, failing to consider an important aspect of the issue, explaining its conclusions in terms unsupported by the record, or reaching an implausible result, what the Department did here was reasonable, appropriate, and well within the scope of the sort of rule that should easily survive judicial review.

Accordingly, this Court should defer to the Department's reasonable exercise of its rulemaking authority in this case.

<u>**CONCLUSION**</u>

The Department of Labor's rules interpreting the 1974 Amendments to the Fair Labor Standards Act are a logical outgrown of the proposed rule, and the Department's interpretation of Section 3(m) concerning tip credit is squarely consistent with its legislative history, and the purposes of the FLSA as broad remedial legislation intended to protect and benefit American workers.

For the foregoing reasons, Defendants' Motion to Dismiss the Complaint should be granted.  Alternatively, to the extent that that the Court finds that dismissal under Rule 12(b)(6) is not the appropriate, then the Court should find in favor of the Defendants' as a matter of law in accordance with Rule 56(c).

Date:   September 19, 2011                              Respectfully submitted,

TONY WEST
Assistant Attorney General

JUDRY L. SUBAR (DC Bar 347518)
Assistant Branch Director
Federal Programs Branch

/s/ Adam C. Siple
ADAM C. SIPLE   (NJ Bar 041782002)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
Tel:  (202) 305-7664
Fax:  (202) 616-8460
adam.c.siple@usdoj.gov

COUNSEL FOR DEFENDANTS