UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL RESTAURANT ASSOCIATION et al., Plaintiffs, v. HILDA L. SOLIS, et al., Defendants. | Civil Action Case No. 11-01116 (ABJ) |

**REPLY MEMORADUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGEMENT, AND OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

## PRELIMINARY STATEMENT

When Congress delegates to administrative agencies the authority to issue rules in the course of implementing substantive legislation, those agencies are to do so in a fashion that invites adequate public participation but that does not straitjacket them as they go about enforcing the law; they are to apply the law as it was intended to be applied but have considerable leeway in determining congressional intent; and they should follow procedures designed to avoid imposing on regulated entities undue economic impact but are not subject to judicial review of the substance of their decisions in that regard. The arguments that Plaintiffs make in this case, however, would stand these principles on their heads. Those arguments should be rejected.

While the Administrative Procedure Act (APA), 5 U.S.C. 551 et seq., generally requires notice and an opportunity for public comment before a rule is finalized, it allows agencies the flexibility to react to such comment, to conduct reanalysis of published proposed rules and to

settle upon appropriate regulatory standards. In this case, that is what the Department of Labor (DOL or the Department) did in publishing, and then finalizing, its rule interpreting the statute's requirement that an employer "inform" its tipped employees of the provisions of Section 3(m) of the Fair Labor Standards Act (FLSA or Act), 29 U.S.C.§ 203(m). Plaintiffs' attempt to avoid those rules by arguing that they did not receive adequate notice of the final rule ignores the fact that that rule grew logically and quite directly from the proposed rule, appropriately taking into account the public comment that DOL received as well as the Department's own analysis.

The substance of that rule is, itself, unassailable. It requires no more, and no less, than the statute on which it is based. Especially in light of the highly deferential standard that this Court must use in deciding whether DOL's rule is so ill-conceived as to be arbitrary and capricious, Plaintiffs' challenge to its provisions cannot succeed.

And Plaintiffs' challenge to the rule under the Regulatory Flexibility Act, 5 U.S.C. 601 et seq., is, likewise, without merit. Judicial review under that statute is limited to the question of whether DOL went through the procedure identified in that statute, which it manifestly did.

For these reasons, and those articulated in Defendant's opening memorandum, this case should be dismissed.

## STATEMENT OF THE CASE

The straightforward background of the DOL rule under challenge in this case is worth bearing in mind. Section 3(m) of the FLSA, 29 U.S.C. 203(m), permits an employer to take a credit against its minimum wage obligations to its tipped employees, but only if the employer meets certain requirements.[1] One of those requirements is that the employer "inform" its tipped

[1] The credit can be sizable: an employer that meets all of the statutory requirements may pay its tipped employees as little as $2.13 an hour, and can take up to $5.12 per hour as a tip credit against its federal minimum wage obligations of $7.25 per hour.

employees of the provisions of Section 3(m) of the FLSA prior to taking the credit. That subsection contains the following five separate requirements before an employer may take a tip credit: that a tipped employee receive a certain amount in cash wages; that a tipped employee receive a certain additional amount on account of the tip credit; that the additional amount on account of tips may not exceed the value of tips actually received by a tipped employee; that tips must be retained by the tipped employee (unless a tip pooling arrangement is in place); and that the tipped employee be informed of these various provisions. 29 U.S.C. § 203(m). In 2008, the Department of Labor issued a Notice of Proposed Rulemaking (NPRM) that proposed to amend a number of FLSA regulations in order to incorporate several statutory amendments to the Act. As to the tip credit notification issue, a requirement that was introduced by the 1974 amendments to the FLSA, the NPRM stated that the agency was proposing that the employer could fulfill its Section 3(m) obligation to inform by "informing its employees that it intends to avail itself of the tip wage credit"; the proposal stated that the notice must be provided in advance of the employer taking the tip credit; and that "the notice need not be in writing, but must communicate to employees that the employer intends to treat tips as satisfying part of the employer's minimum wage obligation." See Updating Regulations Issued Under the Fair Labor Standards Act, 73 Fed. Reg. 43654 (July 28, 2008) ("NPRM").

DOL received a number of comments on this issue through the rulemaking process. Some commenters argued that the Department's interpretation of the statutory requirement was too narrow, and advocated the inclusion of additional requirements not found in the statute – such as a mandate that tip credit notification be given in writing, and that the rule obligate an employer not only to inform a tipped employee of the terms of the statute, but also to explain those statutory provisions. See Updating Regulations Issued Under the Fair Labor Standards

Act, 76 Fed. Reg., 18832, 18842-18843 (April 5, 2011) ("Final Rule"); See, e.g., Administrative Record ("AR") at 0000035-37; 00066-67, 0000096-97, 0000124-126; 0000146-152; 0000246; 0000281. Other commenters stated that the agency's interpretation of the statutory requirement was welcomed, because it would reduce litigation over the issue of what it means to "inform" tipped employees under section 3(m) of the Act. See, e.g., AR at 0000185-187, 0000195-96. In 2011, DOL published its tip credit rule in final form. In that publication, the Department amended the proposed language to more specifically state what information an employer must communicate to its tipped employees in order to "inform" under the statute, basing the regulatory requirements on the five elements of the statutory provision. See Final Rule, 76 Fed. Reg. at 18844. The final regulation did not add any requirements to those that are already found in the FLSA.

## ARGUMENT

### A. THE NEW TIP CREDIT RULE IS A LOGIAL OUTGROWTH OF THE DEPARTMENT'S NOTICE OF PROPOSED RULEMAKING (NPRM).

The notice and comment requirements of the Administrative Procedure Act, 5 U.S.C. § 553(b)(3), are met in a case in which a final rule is a logical outgrowth of a published proposal leading to the final rule. See e.g., Conn. Light & Power Co. v. Nuclear Regulatory Comm'n., 673 F.2d 525 (D.C. Cir. 1982). The rule challenged in this case interprets the requirement in Section 3(m) of the FLSA that tipped employees be "informed" by their employer of the tip credit provisions within that subsection. That rule logically flows from an NPRM in which the Department expressly announced that it intended to do precisely that -- to publish a rule providing the agency's first ever interpretation of what the Section 3(m) statutory obligation to inform employees about the tip credit actually entails. The Plaintiffs' position that the rule did not logically develop from the NPRM is not only absurd on its face, but it is flatly contradicted

by basic facts of this rulemaking, runs counter to the plain text of Section 3(m), and misconceives of the law governing this notice-and-comment rulemaking under the APA.

**(1) The Final Rule is Entirely Consistent with the Logical Outgrowth Jurisprudence of This Circuit.**

In this Circuit, whether a final rule constitutes a logical outgrowth of the proposed rule is determined by a functional standard in which courts ask "whether 'the purposes of notice and comment have been adequately served,' that is, whether a new round of notice and comment would provide the first opportunity for interested parties to offer comments that could persuade the agency to modify its rule." Am. Water Works Ass'n v. EPA, 40 F.3d 1266, 1274 (D.C. Cir. 1994) (quoting Fertilizer Instit. v. EPA, 935 F.2d 1303, 1311 (D.C. Cir. 1991)). Accord Nat'l Exch. Carrier Ass'n, Inc. v. FCC, 253 F.3d 1, 4 (D.C. Cir. 2001).

In examining whether the purposes of notice and comment were adequately served in this case, it is critical to keep in mind that the rulemaking at issue here is not the sort of complex regulatory action that might depend heavily on factual data or study of industry standards. See e.g., Nat'l Mining Ass'n v. Mine Safety & Health Admin., 116 F.3d 520, 531-33 (D.C. Cir. 1997) (finding no logical outgrowth where record lacked data with respect to local practices concerning mine safety inspections which might have shown federal rule was excessive and served no safety purpose); Am. Water Works Ass'n., 40 F.3d at 1274 (holding no logical outgrowth when EPA failed to develop sufficient factual record regarding the ways in which various public and private entities may exercise control over contaminated water systems). Instead, the Department has addressed what is a very narrow question of how best to implement the mandate in Section 3(m) concerning an employer's obligation to inform its employees about the tip credit before the employer is entitled to take that credit against its minimum wage obligations. The proposed rule offered one interpretation of that statutory requirement, and the revised language in the final rule

is based on that proposal and comments received that argued the Department's proposed interpretation was not sufficient to ensure that tipped employees would be informed of the tip credit provisions of Section 3(m).

Having had the benefit of the record that was created, the Department was able to improve its proposal consistent with one of the key purposes of notice and comment, which is to foster a "genuine interchange resulting in improved rules." Conn. Light & Power Co., 673 F.2d at 533 (citations omitted). "Agencies, are free - indeed, they are encouraged - to modify proposed rules as a result of the comments they receive." Ne. Md. Waste Disposal Auth. v. EPA, 358 F.3d 936, 951 (D.C. Cir. 2004) (citations omitted). And while it may be true, as Plaintiffs assert, that agency's cannot bootstrap notice from a few individual comments, the fact that multiple insightful comments were submitted on this issue, as is the case in this rulemaking, is certainly most relevant to the issue of whether notice was adequate. See e.g., Horsehead Res. Dev. v. Browner, 16 F.3d 1246, 1268 (D.C. Cir. 1994) (noting that "insightful comments may be reflective of notice and may be adduced as evidence of its adequacy") (citing Shell Oil Co v. EPA, 950 F.2d 741, 751 (D.C. Cir. 1991)). And the record here demonstrates that the labor and employment community certainly got the message that the Department was going to issue a binding rule providing its interpretation of Section 3(m) with respect how employers should inform their tipped employees of the provisions of that subsection.

Plaintiffs have certainly made it clear that, in their view, the statute only requires employers to communicate to their tipped employees that the employer intends to count tips toward satisfaction of the minimum wage obligation. Such a cramped reading of the statutory phrase at issue here -- "informed of the provisions of this subsection" -- fails to incorporate the specific provisions contained within Section 3(m), and is arguably counter to the fundamental

understanding that the FLSA is remedial statute that should be construed broadly to protect workers. See e.g., Laffey v. Nw. Airlines, Inc., 567 F.2d 429, 461 (D.C. Cir. 1977). See also Pellon v. Bus. Int.'l, Inc., 528 F.Supp.2d 1306, 1309 (S.D. Fla 2007) ("One of the primary purposes of the FLSA is to protect employees from substandard wages.") Vacating the rule, the remedy proposed by plaintiffs, would create a regulatory vacuum in which workers will face the risk of receiving far less information about the tip credit than the law requires. And employers would return to an environment regulated by an undefined statutory term.

Worth noting in this regard is that Congress created the APA notice and comment requirement for two reasons: "to reintroduce public participation and fairness to affected parties after governmental authority has been delegated to unrepresentative agencies, and to assure that the agency will have before it the facts and information relevant to a particular administrative problem, as well as suggestions for alternative solutions." Am. Hosp. Ass'n v. Bowen, 834 F.2d 1037, 1044 (D.C. Cir. 1987) (citations, internal quotation marks, and ellipsis omitted). Here, the approach to Plaintiffs' contention that DOL violated its rights under the APA most consistent with the legislative purpose underlying that statute is to reject it. For one thing, the public has had an opportunity to participate fully in DOL's decision-making process with regard to the tip credit rules. The Administrative Record makes very clear that members of the public across the spectrum provided facts, information and suggestions with regard to those rules. See e.g., 0000033-37; 0000084-104; 000139-142; 0000244-247; 0000269-289; 0000244-247; 0000425-430. But, more importantly, in keeping with the purposes of the APA, the DOL considered the comments it received, and in the keeping with the spirit of the notice-and-comment process, crafted a final rule that is entirely consistent with Section 3(m) of the FLSA.

**(2) <u>The Comments DOL Received in Response to its NPRM Demonstrate Even Further Just How Logically The Final Rule Grew From the Initial Publication.</u>**

The undisputed facts of the rulemaking at issue demonstrate that the new tip credit rule interpreting section 3(m)'s requirement to "inform" flowed directly and logically from the Department's June 2008 NPRM. The overarching and expressly stated goal of the rulemaking in this case, which covered many more topics than the tip credit issue addressed in this litigation, was to bring the Department's Wage and Hour Division regulations up to date with current law. As part of this rulemaking effort, the Department announced that it intended, quite simply, to publish a new tip credit rule -- 29 CFR § 531.59(b) -- which would, among other things, furnish the Department's first ever interpretation of the requirement that tipped employees be "informed" of the tip credit provisions in accordance with Section 3(m) of the FLSA. To this end, the NPRM noted relevant legal authority, specifically, the 1974 FLSA Amendments and case law discussing Section 3(m) and the duty to inform tipped employees of the provisions of that subsection. <u>See</u> NPRM, 73Fed. Reg. at 43659. Plaintiffs concede that the Department called for comments on all issues related to this proposed rulemaking. <u>See</u> Pls. Brief [Doc. # 23] at 13.

The fact that the tip credit as ultimately promulgated grew logically from the proposed rule as initially published is underscored by the nature of the comments submitted in response to the NPRM. The commenters clearly understood that the issue of what it means to "inform" tipped employees of the requirements of section 3(m) was in play throughout the rulemaking process. The commenters were also aware that this issue has been the subject of litigation since 1974, when the requirement was enacted into law, and used those cases to demonstrate why they believed the statutory provision should be interpreted in a certain way. <u>See e.g.</u>, AR 0000124-125; 0000149-0000151; 0000427-428. As a result of the Department's request for comments, a variety of individuals and groups, including the National Employment Lawyers' Association, the

Chamber of Commerce, Littler Mendelson, P.C., and members of Congress, submitted comments specifically addressed to the issue of what employers -- consistent with Section 3(m) of the FLSA -- should communicate to their tipped employees regarding the tip credit provisions. See, e.g., AR 0000066-67, 0000150-152, 0000187, 0000195-196. While the comments took a variety of positions on this issue, many comments endorsed an approach which would have imposed obligations on employers that would have been considerably greater than those included in the final rule. See, e.g., AR 0000124-126; 0000146-152; 0000246; 0000281. Littler Mendelson, P.C. (the law firm representing Plaintiffs in this case) submitted substantive comments in which they expressed their support for the Department's proposal, indicated their agreement that "notice need not be in writing and need not explain the tip credit rules", and emphasized that a rule would help reduce litigation by providing employers with a binding interpretation employers could rely on. See AR at 0000187.

After considering numerous comments on the tip credit rule as proposed, the Department revisited its proposed interpretation of Section 3(m). In so doing, the Department started with the statutory language stating that the tip credit provisions ‘‘shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the *provisions of this subsection*, and all tips received by such employee have been retained by the employee, [except for] pooling of tips among employees who customarily and regularly receive tips.’’ 29 U.S.C.§ 203(m)(2) (emphasis added). Final Rule, 76 Fed. Reg. at 18843. The legislative history of that provision was also considered. Id. The Department concluded that "notice of the specific provisions of 3(m) is required to adequately inform the employee of the requirements of the tip credit" under Section 3(m) of the FLSA, id. at 18844, but did not include in the rule any provisions that are not in the statute itself.

Thus, the Department tweaked the rule it had proposed, consistent with Section 3(m), to instruct employers to inform employees of the following five tip credit requirements found in that subsection:

> (1) the direct cash wage the employer is paying a tipped employee, which can be more than, but cannot be less than, $2.13 per hour; (2) the additional amount the employer is using as a credit against tips received, which cannot exceed the difference between the minimum wage specified in section 6(a)(1) of the FLSA and the actual cash wage paid by the employer to the employee; (3) that the additional amount claimed by the employer on account of tips as the tip credit may not exceed the value of the tips actually received by the employee; (4) that the tip credit shall not apply with respect to any tipped employee unless the employee has been informed of the tip credit provisions of section 3(m) of the Act; and (5) that all tips received by the tipped employee must be retained by the employee except for the pooling of tips among employees who customarily and regularly receive tips. Id. In the end, the rulemaking process in this case led to an improved final rule not very different from the published rule under which tipped employees are to be "informed" of all the tip credit "provisions" as instructed by the express terms of Section 3(m).

Id. at 188844 (explaining the new rule). In the end, the rulemaking process in this case led to an improved final rule not very different from the published proposal and one which will now ensure that employees are "informed" of all of the tip credit provisions included in Section 3(m).

While Plaintiffs have attempted to argue that the Department has somehow imposed new or additional requirements on employers, the reality is that the new tip credit rule is derived entirely from the text of the statute. Section 3(m) unmistakably instructs employers to "inform" their tipped employees of the provisions of that subsection prior to taking a tip credit. And that is precisely what the final rule requires.[2]

In sum, the new tip credit rule is a logical outgrowth of the June 2008 NPRM because the Department acted consistently with its announced goal of providing the agency's first-ever interpretation of the statutory phrase -- "informed of the provisions of this subsection" -- in an

---

[2] The Plaintiffs also point repeatedly to a "webinar" in which a DOL official describes the tip credit rule. See Pls. Brief [Doc. #23] at 10, 18. As this web-based presentation is not part of the administrative record, it should not be considered in this action under the APA. See Envtl. Def Fund Inc. v. Costle, 657 F.2d 275, 284 (D.C. Cir. 1981).

effort to bring its Wage and Hour Division regulations up to date with current law. The public comments submitted in response to the June 2008 NPRM greatly assisted the Department in its examination of Section 3(m), resulting in an improved final rule that accurately reflects the intent of the statute by ensuring that all of the provisions of that subsection are conveyed to tipped employees.

**B. THE NEW TIP CREDIT RULE IS BASED ON A REASONABLE INTERPRETATION OF SECTION 3(m) OF THE FLSA.**

The Department's reasonable interpretation of the statutory duty to "inform" employees of the tip credit under Section 3(m) is entitled to controlling deference and should be upheld. See Long Island Care at Home, Ltd. v. Coke, 551 U.S. 158, 165 (2007). In Coke, the Supreme Court emphasized that courts should defer to the Department's interpretation of the FLSA, when, as here, the Department has focused directly on the matter and used full notice-and-comment procedures to promulgate a rule within its explicit grant of rulemaking power under the 1974 Amendments. Id. at 173. See also United States v. Mead Corp., 533 U.S. 218, 227 (2001) (stressing that an express delegation of rulemaking authority is a strong indicator that Congress intended for courts to defer to the agency's interpretation of the statute). More specifically, the Supreme Court held that the 1974 Amendments to the FLSA -- which added the statutory language at issue here -- expressly provide the Department of Labor with authority to fill in the gaps "as to the scope and definition of statutory terms" through the publication of rules and regulations. Coke, 551 U.S. at 165 (citing Pub. L. No. 93-259, § 13, 88 Stat. 55 (1974)). These "interstitial matter[s]", such as the question "of a broader definition" of a statutory term under the FLSA, are expressly left to the Department, which provides the clarifying details through the rulemaking process. Id. See also Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs., 545 U.S. 967, 982-83 (2005) (holding that an agency's interpretation of a statute pursuant to

delegated authority is entitled to deference unless unambiguously foreclosed by a prior judicial decision); Driver v. AppleIllinois, LLC, 265 F.R.D. 293, 301 (N.D. Il. 2010) (observing the lack of a controlling definition of what constitutes adequate tip credit notice in part because the Department had not promulgated regulations on the matter).

Consistent with Coke, the Department has exercised its explicitly granted rulemaking authority under the 1974 Amendments. Its tip credit rule is far from being foreclosed -- unambiguously or otherwise -- by the statutory language. Rather, the final rule does no more than to accurately reflect the statutory language of Section 3(m). Just as the statute requires an employer to inform a tipped employee of five items before the employer may take the tip credit, so too does DOL's regulation do just that and no more. Thus, the statute's terms, set out below, are incorporated into the final rule, as indicated by the placement of bracketed numbers representing the numbers used by DOL in announcing the rule to refer to each term of the statute:

> [I]n determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to—
>
> (1)**)[1]**the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and
>
> (2)**)[2]**an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title.
>
> **[3]** The additional amount on account of tips may not exceed the value of the tips actually received by an employee. **[4]** The preceding 2 sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and **[5]** all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

[29 U.S.C. §203(m)]. [Compare with Final Rule, 76 Fed. Reg. at 18844 (explaining final rule)].

Far from clinging to a single snippet of legislative history, as Plaintiffs quite erroneously allege, the Department's final analysis of the rule is properly focused on the express terms of

Section 3(m). See Final Rule, Fed. Reg. 18843-44. As discussed above and in Defendants' opening memorandum in support of dismissal, the Department's interpretation carefully tracks the language of Section 3(m). While legislative history factored into the Department's analysis of the statutory language, it served primarily to reinforce the Department's otherwise reasonable interpretation of the statutory text. See e.g., FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 146 (2000) (recognizing that legislative history can help to further delineate Congress' intent with respect to the meaning of statutory language).

Contrary to Plaintiffs' argument, the limited case law that does exist concerning the employer's duty to inform tipped employees about the tip credit under Section 3(m) is consistent with the Department's interpretation of its rule. The Sixth Circuit's opinion in Kilgore v. Outback Steakhouse of Florida, Inc.,160 F.3d 294 (6th Cir. 1998) -- which was included in the Department's NPRM and which is relied on heavily by Plaintiffs -- underscores this point. In Kilgore, the Court held that the employer should inform its tipped employee of its intent to treat tips as satisfying part of the minimum wage obligation, "but need not necessarily explain the tip credit." Kilgore, 160 F.3d at 298 (internal quotations omitted). In reaching its decision, however, the Court emphasized that the employer, Outback Steakhouse, had a practice of providing all applicants for employment with a written statement describing the "Outback Tip Policy", which "fully quoted" subsection 3(m) of the FLSA. Id. at 299 (internal punctuation and quotations omitted). The court concluded that the content of Outback's written tip policy satisfied the requirements of Section 3(m). Id. Additionally, the court observed that Outback Steakhouse provided training in which the tip credit was "explained" to all new employees. Id. The court held that what the employer did in that case was adequate under the statute.

In view of the ample information that was provided to employees in Kilgore, it simply was not necessary to the disposition of the case for the court to fully examine the statutory phrase, "informed by the employer of the provisions of this subsection." Id. at 298. Whatever the precise scope and meaning of those terms, it was clear in Kilgore that Outback's practice of providing employees with a written policy fully quoting Section 3(m) along with training about tip credit easily satisfied, and perhaps exceeded, the requirements terms of the statute.

Indeed, in a case cited by Plaintiffs -- Solis v. Min Fang Yang, 345 Fed. App'x. 35, 38 (6th Cir. 2009) -- the Sixth Circuit recently read its decision in Kilgore to mean simply that "*[a]t a minimum*, the employer must provide notice to employees of its intent to take a tip credit." (emphasis added). And in ruling in Min Fang that the employer had failed to provide adequate notice under Section 3(m), the Sixth Circuit noted that the employer "did not discuss its minimum-wage obligation or *explain* that it was applying a tip credit against that obligation." Id. (emphasis added). Thus, it appears that the Sixth Circuit decision in Kilgore is quite limited and is largely in accord with the First Circuit's ruling in Martin v. Tango's Restaurant, 969 F.2d 1319, 1322 (1st Cir. 1992), in which that court determined that Section 3(m) requires "*at the very least notice* to employees of the employer's intention to treat tips as satisfying part of the employer's minimum wage obligation[, and that] *it could easily be read to require more*." (emphasis added).

The other cases relied on by Plaintiffs further illustrate that Kilgore is a narrow holding -- one which is necessarily limited to the particular facts that informed the court's decision -- which merely expresses a minimum or baseline standard by which other courts might assess the adequacy of notice under Section 3(m). In Driver v. AppleIllinois, 265 F.R.D. 293, 301 (N.D. Ill. 2010), for example, a district court observed that while there was little in the way of controlling guidance regarding how employees should be informed about tip credit, the Court of

Appeals decisions on the issue, including Kilgore, had found that "*at a minimum*, the employer must inform its tipped employees that it intends to treat tips as satisfying part of the minimum wage obligation." (emphasis added). Recently, in Copantitla v. Fiskardo Estiatorio, Inc., 788 F.Supp.2d 253, 289 (S.D.N.Y. 2011), the court reached a similar conclusion, observing that the consensus from the Courts of Appeals decisions on this issue is that, at the very least, employers must inform their employees of their intention to count tips toward part of the minimum wage obligation. Ultimately, the court decisions addressing the duty to inform tipped employees about tip credit under Section 3(m) do nothing to preclude the DOL's interpretation of the statutory requirement.

It is no coincidence, then, that much like Kilgore, many of the cases cited by Plaintiffs involve instances in which the employees received more than a mere statement of the employer's intent to treat tips as satisfying part of the minimum wage obligation. In Pellon v. Business Representation International, Inc., 528 F. Supp. 2d 1306, 1310-11 (S.D. Fla. 2007), for example, the Court determined that a prominently displayed Department of Labor poster concerning the tip credit when combined with a verbal notice that the employer would be paid $2.13 an hour plus tips was consistent with Kilgore and offered adequate information to tipped employees under Section 3(m). Similarly, in Chan v. Triple 8 Palace, Inc., 2006 WL 851749 (S.D.N.Y Mar. 30, 2006), the court, citing to Kilgore, stated that an employer could provide adequate notice about tip credit by furnishing a copy of Section 3(m) to each of their employees while informing those employees that their tips would be credited against the minimum wage as permitted by law. 2006 WL 851749, *19.

Thus, the limited jurisprudence in this area has explored the margins of the Section 3(m) requirement -- outlining and establishing its most basic parameters. These cases, if anything,

support the reading of the statute found in DOL's final rule, not any contrary construction advocated by plaintiffs. As such, the case law evaluating the adequacy of specific forms or practices of providing notice fully supports the Department's decision to exercise its congressionally delegated rulemaking authority to interpret this key requirement of the tip credit under the FLSA

The final rule interpreting Section 3(m) flowed directly from the dynamic interplay that full notice and comment affords, and is consistent with the plain language of the statute, its legislative history, and the broad remedial purposes of the FLSA. As the Department's interpretation of the statute that it is charged with enforcing is eminently reasonable, the new tip credit rule should be upheld.

**C. THE DEPARTMENT HAS FULLY COMPLIED WITH THE REGULATORY FLEXABILITY ACT.**

While acknowledging that the Department certified pursuant to 5 U.S.C. § 605(b) that this rulemaking is exempt from the requirements of the Regulatory Flexibility Act 5 U.S.C. § 601 et seq.-- and without so much as citing a single case to support their argument (other than off-handedly referring once to Kilgore) -- Plaintiffs continue to insist that the new tip credit rule violates the that statute. Plaintiffs have done nothing more than to substitute their own self-serving rhetoric piled on top of false premises in place of legal analysis.[3]

As stressed in Defendants' opening brief, the D.C. Circuit has conclusively held that the Regulatory Flexibility Act is a purely procedural statute that imposes no substantive limitations on agency decisionmaking. See Nat'l Tel. Coop. Ass'n v. FCC., 563 F.3d 536, 540 (D.C. Cir.

[3] Plaintiffs' effort to assert a claim for relief based on Executive Orders 12866 and 13563 is squarely foreclosed, as Plaintiffs have not addressed any of Defendant's arguments for dismissal of that claim. See Buggs v. Powell, 293 F. Supp. 2d 135, 141 (D.D.C. 2003) ("when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that plaintiff failed to address as conceded.") (citing FDIC v. Bender, 127 F.3d 58, 67-68 (D.C. Cir. 1997)).

2009). Here, the Department satisfied the Act's procedural requirements when it certified in accordance with § 605(b) that this particular rulemaking is exempt from the provisions of the statute. Accordingly, Plaintiffs' claims under the Regulatory Flexibility Act should be dismissed.

Moreover, Plaintiffs' argument under the Regulatory Flexibility Act is premised on the erroneous notion that DOL's tip credit rule requires employers not only to inform their tipped employees of the tip credit requirements, but also to explain those requirements, and is further grounded on the mistaken idea that DOL effectively requires tip credit information to be provided in writing. Plaintiffs' assumptions are simply wrong. The rule does not require explanation, and DOL has expressly said that its new tip credit notice rule does not require the information to be provided in writing (although it might be a good idea for it to be). Final Rule, 76 Fed. Reg. at 18844. Furthermore, as the Final Rule points out, an FLSA recordkeeping rule, 29 C.F.R. 516.28(a)(3), already requires employers to report to tipped employees in writing each time the tip credit that an employer takes per hour changes from one week to the next. Id.

More fundamentally, the Department's rules implementing the FLSA must be consistent with what Congress intended, and, indeed, a failure to honor the statutory language creates the risk that the Department interpretation may not receive the controlling deference to which it is ordinarily entitled. See e.g., Mead, 533 U.S. at 227 (noting that an agency's regulation may be set aside if "manifestly contrary to statute"). By simply updating its regulations to ensure that tipped employees are informed of the tip credit provisions in accordance with Section 3(m), the Department has done no more than to clarify an obligation that Congress imposed when it amended the FLSA in 1974. Although it might have elected to do so, the Department deliberately chose not to impose any additional requirements beyond those which are clearly

based in the text of Section 3(m). Thus, to the extent that there are any costs associated with informing employees about the provisions that make up the tip credit (or penalties for failing to do), these are compliance costs that are squarely consistent with Congress' intent and not the product of additional regulatory action outside the boundaries of Section 3(m).

**CONCLUSION**

For the forgoing reasons, and for the reasons stated in Defendant's opening memorandum, Defendant's Motion to Dismiss the Complaint should be granted and Plaintiffs' cross-motion for summary judgment should be denied. Alternatively, to the extent the Court finds that dismissal under Rule 12(b)(6) is not appropriate, then the Court should find in favor of Defendants as a matter of law in accordance with Rule 56(c).

Date: December 2, 2011

Respectfully submitted,

TONY WEST
Assistant Attorney General

JUDRY L. SUBAR (DC Bar 347518)
Assistant Branch Director
Federal Programs Branch

/s/ Adam C. Siple
ADAM C. SIPLE (NJ Bar 041782002)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
Tel: (202) 305-7664
Fax: (202) 616-8460
adam.c.siple@usdoj.gov

COUNSEL FOR DEFENDANTS