# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

```
_____
                                    )
NATIONAL RESTAURANT                 )
ASSOCIATION, et al.,                )
                                    )
                Plaintiffs,         )
                                    )
        v.                          )      Civil Action No. 11-1116 (ABJ)
                                    )
HILDA L. SOLIS, Secretary, U.S.     )
Department of Labor, et al.,        )
                                    )
                Defendants.         )
_____)
```

## MEMORANDUM OPINION

Plaintiffs National Restaurant Association, Counsel of State Restaurant Associations, Inc., and National Federation of Independent Businesses bring this action against defendants Hilda L. Solis, in her official capacity as Secretary of the U.S. Department of Labor; Nancy Leppink, in her official capacity as Acting Administrator of the U.S. Department of Labor; and the U.S. Department of Labor ("the Department" or "DOL"). Plaintiffs allege that defendants violated the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 611, 702 (2006), when DOL promulgated a new regulation, 29 C.F.R. § 531.59(b) (2011), concerning an employer's obligation to inform tipped employees of the "tip credit" requirements of the Federal Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201–219 (2006). Defendants have moved to dismiss, or, in the alternative, for summary judgment, [Dkt. # 15], and plaintiffs have filed a cross-motion for summary judgment. [Dkt. # 24]. Since the agency complied with the APA notice requirements when it conducted this rulemaking exercise, and the public was fully and

specifically informed of the subject matter under consideration, the Court will deny plaintiffs' motion for summary judgment and grant defendants' motion.

## I.   BACKGROUND

The FLSA requires employers covered by the statute to pay hourly employees a minimum wage.  29 U.S.C. § 206.  But the statute as it is currently configured also permits employers to pay employees who collect tips less than the minimum wage under certain circumstances.  29 U.S.C. § 203(m) ("section 3(m)").  Referred to as the "tip credit," section 3(m) allows employers to use tips received by tipped employees to partially satisfy the hourly minimum wage requirement if an employee "has been informed by the employer of the provisions of this subsection . . . ."  *Id*.  In other words, if an employer fails to inform its tipped employees of the provisions of section 3(m), then no tip credit can be taken, and the employer is liable for the full minimum wage.

### A.  Statutory and Regulatory Background

In 1966, Congress passed the amendment to FLSA that first enabled employers to take advantage of a tip credit.  Pub. L. No. 89-601 §101(a), 80 Stat. 830 (1966).  The following year, the Department promulgated its first regulation implementing section 3(m).  29 C.F.R. § 531.59 (1967).  As originally enacted, neither section 3(m) nor the implementing regulation required employers to inform employees about the statutory provision before taking the tip credit.  That changed in 1974, when Congress again amended FLSA to require employers to inform employees of the provisions of section 3(m) in order to be eligible for the tip credit.  Pub. L. No. 93-259, § 13, 88 Stat. 55 (1974).[1]  As amended, FLSA provides:

---

1       Although section 3(m) of FLSA has been amended several times since 1974, the language from the 1974 amendments is the same language currently found in the statute.

> In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to –
>
> (1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and
>
> (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title.
>
> The additional amount on account of tips may not exceed the value of the tips actually received by an employee. *The preceding [two] sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection,* and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

29 U.S.C. § 203(m) (2006) (emphasis added).   A Senate Report concerning the 1974 amendments explained that "[t]he tip credit provision . . . is designed to insure employer responsibility for proper computation of the tip allowance and to make clear that the employer is responsible for informing the tipped employee of how such employee's wage is calculated.  Thus the bill specifically requires that the employer must explain the tip provision of the Act to the Employees . . . . " S. Rep. No. 93-690, at 43 (1974).

## B.  The Proposed Rule

Although Congress enacted the requirement that employers inform their employees prior to taking the tip credit in 1974, the Department did not initiate further rulemaking until 2008.  On July 28, 2008, the Department published a Notice of Proposed Rulemaking ("NPRM"), which stated in its preamble:

> In this proposed rule, the Department of Labor . . . proposes to revise regulations issued pursuant to the Fair Labor Standards Act of 1938 (FLSA) . . . that have become out of date because of subsequent legislation or court decisions.  These

> proposed revisions will conform the regulations to FLSA Amendments passed in 1974, 1977, 1996, 1997, 1998, 1999, 2000, and 2007 . . . .

Updating Regulations Issued Under the Fair Labor Standards Act ("Proposed Rule"), 73 Fed. Reg. at 43654 (July 28, 2008) (to be codified at 29 C.F.R. pts. 4, 531, 553, 778, 779, 780, 785, 786, & 790). The agency was clear about the broad scope of the undertaking: "The Department requests comments on all issues related to this notice of proposed rulemaking." *Id*. at 43655.

Section 3(m) was one of several statutory provisions specifically identified in the NPRM as being a particular subject of the announced rulemaking. The NPRM included a section entitled "Tipped Employees," and the notice expressly referred to the 1974 amendments:

> Section 13(e) of the Fair Labor Standards Act Amendments of 1974 amended the last sentence of section 3(m) by providing that an employer could not take a tip credit unless: "(1) [its] employee has been informed by the employer of the provisions of this subsection . . . ."

*Id*. at 43659 (alteration in original) (quoting Pub. L. No. 93-259, § 13(e), 88 Stat. 55 (1974)). The Tipped Employees section of the NPRM went on to discuss the legislative history of the tip credit, and it also summarized the relevant case law on the need to inform employees under section 3(m):

> Courts have disallowed the use of the tip credit for lack of notice even "where the employee has actually received and retained base wages and tips that together amply satisfy the minimum wage requirements," remarking that "[i]f the penalty for omitting notice appears harsh, it is also true that notice is not difficult for the employer to provide." *Reich v. Chez Robert, Inc.*, 28 F.3d 401, 404 (3d Cir. 1994) (citing *Martin v. Tango's Restaurant*, 969 F.2d 1319, 1323 (1st Cir. 1992)). Although written notice is frequently provided, it is not required to satisfy the employer's notice burden. *Compare Kilgore v. Outback Steakhouse of Florida, Inc.*, 160 F.3d 294, 299 (6th Cir. 1998) (written notice provided to all applicants as matter of course), with *Pellon v. Business Representation Int'l, Inc.*, 528 F. Supp. 2d 1306, 1310-11 (S.D. Fla. 2007), appeal docketed, No. 08-10133 (11th Cir. Jan. 8, 2008) (section 3(m)'s requirement was met through verbal notice that plaintiff would be paid $2.13 plus tips, combined with prominent display of FLSA poster explaining tip credit). Additionally, while employees must be "informed" of the employer's use of the tip credit, the employer need not "explain" the tip credit. *See Kilgore,* 160 F.3d at 298 ("[A]n employer must provide notice to the

> employees, but need not necessarily 'explain' the tip credit * * * '[I]nform' requires less from an employer than the word 'explain.' "); *cf. Bonham v. Copper Cellar Corp.*, 476 F. Supp. at 101 & n.6 ("vague references to conversations about the minimum wage" are insufficient to establish section 3(m) notice").

*Id*. at 43659-60 (alterations in original). Against this backdrop, the NPRM proposed a new regulation, which stated:

> Pursuant to section 3(m), an employer is not eligible to take the tip credit unless it has informed its employees that it intends to avail itself of the tip wage credit. Such notice shall be provided in advance of the employer's use of the tip credit; the notice need not be in writing, but must communicate to employees that the employer intends to treat tips as satisfying part of the employer's minimum wage obligation.

*Id*. at 43668.  The Department of Labor received comments on the proposed rules from July 28 to September 26, 2008.[2]

### C.  The Final Rule

On April 5, 2011, the Department of Labor issued a final rule regarding the FLSA's tip credit provision.  Updating Regulations Issued Under the Fair Labor Standards Act ("Final Rule"), 76 Fed. Reg. 18832 (Apr. 5, 2011) (codified at C.F.R. pts. 516, 531, 553, 778, 779, 780, 785, 786, & 790).  The introductory summary explained:

> Upon careful reexamination of the terms of the [FLSA], its legislative history, and a review of the public comments, the Department is revising its interpretation from the NPRM of the level of explanation that employers must provide when informing tipped employees about the tip credit pursuant to section 3(m).

*Id*. at 18844.  The final rule, which was codified as 29 C.F.R. § 531.59(b), provided:

> Pursuant to section 3(m), an employer is not eligible to take the tip credit unless it has informed its tipped employees in advance of the employer's use of the tip credit of the provisions of section 3(m) of the Act, i.e.:  The amount of the cash wage that is to be paid to the tipped employee by the employer; the additional

---

[2]    The NPRM originally stated that the time period for filing written comments would end on September 11, 2008, but was later extended by fifteen days to September 26, 2008.  Updating Regulations Issued Under the Fair Labor Standards Act ("Extension of Time"), 73 Fed. Reg. 49621 (Aug. 22, 2008).

amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee; that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

*Id*. The rule went into effect on May 5, 2011. 29 C.F.R. § 531.59(b).

### D.  The Lawsuit Before This Court

Plaintiffs are national trade and industry associations whose members employ tipped employees paid under section 3(m) and are subject to the tip credit notice regulation. Compl. ¶¶ 8–10.  Defendants Hilda L. Solis and Nancy Leppink are government officials sued in their official capacities.  *Id*. ¶¶ 12, 14.  Defendant U.S. Department of Labor is the federal agency charged with administration and enforcement of the FLSA, including promulgating regulations and implementing the FLSA.  *See* 29 U.S.C. § 204.

Plaintiffs filed this lawsuit on June 16, 2011, claiming that defendants violated the APA when promulgating 29 C.F.R. § 531.59(b). [Dkt. # 1].  The complaint contains the following claims:

- Count I alleges that defendants violated section 553 of the APA by failing to provide the public with sufficient notice and opportunity to comment on the tip notice requirements contained in the 2011 Final Rule. Compl. ¶¶ 38–49.  Essentially, plaintiffs argue that the agency was bound to re-notice the final rule for another round of public comment given its variance from the original proposal.

- Count II alleges that defendants violated section 701 of the APA because the regulation is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance" with the FLSA tip credit provision, 29 U.S.C. § 203(m), because "it conflicts with the DOL's previously announced positions and established case law, and [is] based on DOL's unsupported assertion . . . that the changes will not result in any additional compliance costs."  *Id*. ¶¶ 50–57.

- Count III alleges that defendants violated section 701 of the APA because the regulation is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with Executive Orders 12866 and 13563," which "require agencies to review existing and proposed regulations to identify whether they may be made more effective or less burdensome." *Id.* ¶¶ 58–66.[3]

- Count IV alleges that defendants "violated Sections 604, 605, and 611 of the APA by failing to conduct an adequate regulatory flexibility analysis[.]" *Id.* ¶¶ 67–74.

Plaintiffs seek an order vacating 29 C.F.R. § 531.59(b) and enjoining defendants from "enforcing, applying, or implementing" the tip credit requirements embodied in the regulation. *Id.* at 20 (prayer for relief). Plaintiffs also seek litigation costs and attorney's fees. *Id.*

## II.    STANDARD OF REVIEW

### A.  Motion to dismiss

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." 556 U.S. at 678. And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

---

3      Plaintiffs concede Count III.  *See* Motions Hearing Transcript ("Tr.") at 20 (May 3, 2012).  Accordingly, the motion to dismiss will be granted with respect to that claim, and Count III will be dismissed.

sheer possibility that a defendant has acted unlawfully." *Id*.  A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id*., quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed liberally in plaintiff's favor, and the Court should grant plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Nevertheless, the Court need not accept inferences drawn by plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions.  *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002); *Kowal*, 16 F.3d at 1276.  In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citations omitted).

### B.  Cross motions for summary judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  To defeat

summary judgment, the non-moving party must "designate specific facts showing there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). The mere existence of some factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is only "material" if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). In assessing a party's motion, "[a]ll underlying facts and inferences are analyzed in the light most favorable to the non-moving party." *N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57, 65 (D.D.C. 2010), citing *Anderson*, 477 U.S. at 247.

"The rule governing cross-motions for summary judgment . . . is that neither party waives the right to a full trial on the merits by filing its own motion; each side concedes that no material facts are at issue only for the purposes of its own motion." *Sherwood v. Washington Post*, 871 F.2d 1144, 1148 n.4 (D.C. Cir. 1989), quoting *McKenzie v. Sawyer*, 684 F.2d 62, 68 n.3 (D.C. Cir. 1982). In assessing each party's motion, "[a]ll underlying facts and inferences are analyzed in the light most favorable to the non-moving party." *N.S. ex rel. Stein*, 709 F. Supp. 2d at 65, citing *Anderson*, 477 U.S. at 247.

Defendants have moved to dismiss under Rule 12(b)(6), or, in the alternative, for summary judgment under Rule 56(a). Because plaintiffs concede Count III of the complaint, that claim will be dismissed under Rule 12(b)(6). Because Counts I, II, and IV turn, at least in some measure, on the Administrative Record submitted in connection with the motion for summary judgment, the Court will analyze those claims under Rule 56(a).

### III.    ANALYSIS

### A. DOL's Notice and Comment procedure was sufficient.

The APA requires that a notice of proposed rulemaking must contain "*either* the terms of substance of the proposed rules *or* a description of the subjects and issues involved." 5 U.S.C. § 553(b)(3) (2006) (emphasis added).   The APA's notice and comment requirements "serve the salutary purposes of (1)'ensur[ing] that agency regulations are tested via exposure to diverse public comment, (2) ensur[ing] fairness to affected parties, and (3) [giving] affected parties an opportunity to develop evidence in the record to support their objections to the rule and thereby enhance the quality of judicial review.'"   *AFL-CIO v. Chao*, 496 F. Supp. 2d 76, 91 (D.D.C. 2007), citing *Int'l Union, United Mine Workers of Am. v. Mine Safety and Health Admin.*, 407 F.3d 1250, 1259 (D.C. Cir. 2005).   Thus, the relevant inquiry in determining whether notice of a proposed rule was adequate is whether it served those goals.   *Nat'l Ass'n of Psychiatric Health Sys. v. Shalala*, 120 F. Supp. 2d 33, 39 (D.D.C. 2000), citing *Nat'l Mining Ass'n v. Mine Safety and Health Admin.,* 116 F.3d 520, 531 (D.C. Cir. 1997).

Because comments received by the agency are expected to shape the outcome of a final rule, a final rule need not be identical to the proposed rule.   *Small Refiner Lead Phase-Down Task Force v. EPA* ("*Small Refiner*")*,* 705 F.2d 506, 546 (D.C. Cir. 1983).   Indeed, "[t]he whole rationale of notice and comment rests on the expectation that the final rules will be somewhat different and improved from the rules originally proposed by the agency."   *Trans-Pac. Freight Conf. of Japan/Korea v. Fed. Mar. Comm'n*, 650 F.2d 1235, 1249 (D.C. Cir. 1980).   It is not "uncommon for a final rule to contain new provisions that are 'substantially different' from those in the proposed rule."   *Select Specialty Hospital-Akron, LLC v. Sebelius*, 820 F. Supp. 2d 13, 23 (D.D.C. 2011), quoting *Health Ins. Ass'n of Am., Inc.*, 23 F.3d 412 at 421 (D.C. Cir. 1994).   "A

standard that required otherwise would obligate an agency to engage in successive rounds of notice and comment any time a final rule differs from what it proposed, greatly impeding and delaying an agency's ability to address a problem."  *Id.*, citing *Am. Med. Ass'n v. United States*, 887 F.2d 760, 768 (7th Cir. 1989).

Plaintiffs claim here, though, that the final rule adopted by the agency "deviates so greatly" from the proposed rule that the notice "failed to appropriately structure the issue and afford the public a reasonable opportunity to comment."  Pls.' Mem. in Supp. of Cross-Mot. for Summ. J. and Opp. to Defs.' Mot. to Dismiss, or, in the Alternative, Mot. for Summ. J. ("Pls.' Mem./Opp.") [Dkt. # 23] at 12 (citation omitted).  Both plaintiffs and defendants direct the Court to the D.C. Circuit's opinion in *Conn. Light & Power Co. v. Nuclear Reg. Comm'n*, 673 F.2d 525, 533 (D.C. Cir. 1982), which they agree sets out the appropriate test.  In that case, the court explained:

> An agency adopting final rules that differ from its proposed rules is required to renotice when the changes are so major that the original notice did not adequately frame the subjects for discussion.  The purpose of the new notice is to allow interested parties a fair opportunity to comment upon the final rules in their altered form.  The agency need not re-notice changes that follow logically from or that reasonably develop the rules it proposed originally.

*Id*.

Drawing on this language, the parties submit that the question the Court must answer is whether the final rule was the "logical outgrowth" of the rule in the NPRM.  But that is only part of the analysis.  According to *Conn. Light & Power*, the operative question is whether the original notice "adequately frame[d] the subjects for discussion."  *Id.*  That makes sense because the inquiry grows directly out of the language of the APA, which requires the agency to put interested parties on notice of *either* the substance of the proposed rule *or* the subject matter of the rulemaking.  5 U.S.C.  § 553(b) (emphasis added).  In other words, the Court's task is not

simply to compare the final rule with the text of the originally proposed rule, but more fundamentally, to compare the final rule with the agency's original description of the subject of the upcoming rulemaking. Moreover, *Conn. Light & Power* makes it clear that an agency need not re-notice revised rules that either flow logically *or* "reasonably develop" the rules originally suggested. 673 F.2d at 533. Viewed through any of these lenses, DOL's notice of proposed rulemaking was adequate, and the agency was not required to issue a second notice in this case.

    1.  <u>The NPRM adequately framed the subject of the rulemaking</u>.

The NPRM adequately framed the subject of the rulemaking as required by the APA and *Conn. Light & Power*: the notice specifically apprised the public of the agency's intention to promulgate a rule implementing the unambiguous statutory requirement that employers notify employees of the provisions of the statute concerning the tip credit.

On the very first page of the NPRM, the agency announced that the objective of the rulemaking was to "conform the regulations to FSLA amendments passed in 1974" as well as later amendments. Proposed Rule, 73 Fed. Reg. at 43654. In the "Tipped Employees" section of the notice, the NPRM again specifically invoked the 1974 amendments and quoted the language of the 1974 legislation that provided: "an employer could not take a tip credit unless . . . [its] employee has been informed by the employer of the provisions of this subsection . . . . " *Id.* at 43659, citing Pub. L. No. 93-259, § 13(e), 88 Stat. 5. The NPRM went on to survey the limited body of existing case law, pointing out that courts have held "that notice is not difficult . . . to provide," *id.* at 43569, citing *Chez Robert,* 28 F.3d at 404, and that written notice has not been explicitly required although it is often given. *Id.* The agency also reported that under the case law, "while employees must be 'informed' of the employer's use of the tip credit, the employer need not 'explain' the tip credit." *Id.*, citing *Kilgore*, 160 F.3d at 298. So, it was not a mystery

after the NPRM was issued that the agency had the question of how employees are to be informed squarely on the table in front of it.

Plaintiffs argue that because the text of the originally proposed regulation only provided that "an employer is not eligible to take the tip credit unless it has informed its employees that it intends to avail itself of the tip wage credit," *id*. at 43668, the NPRM served to notify them that DOL might adopt a rule requiring only that employers inform employees of their intent to avail themselves of the credit and nothing more.  Tr. at 21–22 ("It is our position that the Department issued notice and comment and proposed the standard where they suggested that all the employer was required to do was essentially inform employees that it was intending to claim the tip credit. That is a far cry from the actual final regulations that were proposed here.")  But the proposed regulation is only one part of the notice, and plaintiffs' cramped interpretation is not supported by a reading of the NPRM as a whole.[4]  *See* Statement of P. & A. in Supp. of Defs.' Mot. to Dismiss, or, in the Alternative, for Summ. J. ("Defs.' Mem.") [Dkt. # 15] at 12.  Notwithstanding the approach embodied in DOL's first cut at the issue, the public was fully informed that the goal of the exercise was to come up with a regulation that implemented the *statute*.  And the operative portion of the statute – which was explicitly set forth in the notice – calls for employees to be informed "of the provision*s* of this subsection."  Proposed Rule, 73 Fed. Reg. at 43659 (emphasis added).  Plaintiffs can hardly complain now that the NPRM was insufficient to put

---

4       Indeed, as plaintiffs repeatedly emphasize, the NPRM specifically cited the *Kilgore* opinion from the Sixth Circuit.  And, in that case, the record reflected that the employees were provided with a written policy that not only notified them "that tips will be used as a credit against the minimum wage," but also "fully quoted subsection 3(m) of the FLSA."  160 F.3d at 299.

them on notice of what ultimately took place, which was the promulgation of a regulation that requires employers to do just that.[5]

Plaintiffs contend nonetheless that the notice did not adequately inform the public that the agency was contemplating requiring employers to make more specific disclosures. Pls.' Mem./Opp. at 13 (asserting that the NPRM "gives no hint that DOL was contemplating imposing significant additional notice requirements[] and does not ask the public to comment on what additional notice requirements should be imposed"). But the APA does not require that the NPRM include this level of detail. What is required is that the NPRM "adequately frame the subjects for discussion," *Conn. Light & Power Co.*, 673 F.2d at 533, so that the notice "affords exposure to diverse public comment, fairness to affected parties, and an opportunity to develop evidence in the record." *Nat'l Ass'n of Psychiatric Health Sys.*, 120 F. Supp. 2d at 39 (quoting *Nat'l Mining Ass'n*, 116 F.3d at 531). The NRPM clearly meets that test here. After all, the agency did solicit comments "*on all issues* related to this notice of proposed rulemaking," Proposed Rule, 73 Fed. Reg. at 43655 (emphasis added). And the volume of comments it received – from both employees and management – addressing the nature of the information to be provided to employees, *see, e.g.*, Administrative Record ("A.R.") [Dkt. # 29] at 427 (comments from Epstein Becker & Green. P.C. ("Epstein Becker")), A.R. at 124 (comments from AFL-CIO), A.R. at 150–51 (comments from National Employment Lawyers Association

---

5        Plaintiffs agreed during oral argument that the final rule does not stray from or add to the statutory requirements in any way. Tr. at 29. Plaintiffs complained at the hearing that the final rule is punitive because an employer may not claim the credit without providing employees with the specified information. *Id.* But that requirement is mandated by the statute, and the NPRM plainly informed the public that the rule under discussion would implement the law enacted in 1974 stating that an employer could not avail itself of the credit "unless" its tipped employees were properly informed. Proposed Rule, 73 Fed. Reg. at 43668.

("NELA")), is a strong indication that interested parties plainly understood what was at stake,[6] and that plaintiffs' claim that commenters "didn't anticipate" that there could be a notice requirement beyond what was originally proposed, Tr. at 39, rings hollow.  Thus, the Court finds that the NPRM "adequately framed" the issue of how employees should be informed of the provisions of section 3(m) as a subject for discussion in the rulemaking.

>    2.  The Final Rule was the logical outgrowth and/or a reasonable development of
>        the proposed rule.

While the Court believes that the key *Conn. Light & Power* test has thus been satisfied, it will also consider the question posed by the parties:  whether the final rule is a logical outgrowth or a reasonable development of the proposed rule.  This question must be answered on a case-by-case basis because the D.C. Circuit has provided "no precise definition of what counts as a 'logical outgrowth[.]'" *Nat'l Ass'n of Psychiatric Health Sys.*, 120 F. Supp. 2d at 40, citing *Nat'l Mining Ass'n*, 116 F.3d at 531.  Therefore, the Court must examine the specific facts of this case to determine whether the final rule was a logical outgrowth of the one proposed.

It is true that in this case, the final rule is more specific than the proposed rule in the sense that it requires employers to make five specific disclosures, which were not itemized in the proposed rule.[7]  Plaintiffs argue that they therefore did not have a meaningful opportunity to

---

6    While plaintiffs are correct that an agency cannot "bootstrap notice from a comment[] submitted after the NPRM is issued," Pls.' Mem./Opp. at 16, citing *AFL-CIO v. Donovan*, 757 F.2d 330, 340 (D.C. Cir. 1985), this Circuit has also held that "insightful comments may be reflective of notice and may be adduced as evidence of its adequacy."  *Horsehead Res. Dev. Co. v. Browner*, 16 F.3d 1246, 1268 (D.C. Cir. 1994).  Here, there were a number of comments demonstrating an awareness that defendant planned to promulgate a rule regarding the "inform" requirement.

7    The Court notes that plaintiffs mischaracterize what the NPRM actually proposed, and their hyperbole did not advance consideration of the issues.  The complaint alleges, for example, that the NPRM "proposed to make only technical and non-substantive changes to the tip credit regulations."  Compl. ¶ 25.  The complaint also describes the NPRM as proposing only "minor

provide comments on the particular disclosures that are now required under the final rule.  Pls.'
Mem./Opp. at 13.  Neither party has pointed to any precedent where the final rule chosen by the
agency is more specific than, as opposed to more stringent than or different from, the proposed
rule.[8]

But as the Court has already observed, the purpose of the rulemaking was to conform the
regulations to the statute.  And section 3(m) of FLSA, which is the touchstone for agency

_____

and immaterial changes and technical updates."  *Id.* ¶ 23.  Plaintiffs do not offer any citations for
these statements, and a careful review of the actual language of the NPRM reveals that DOL
never represented that it planned to make only "technical and non-substantive" changes.  Rather,
the NPRM plainly stated that DOL intended to "revise regulations issued pursuant to [FLSA] . . .
that have become out of date because of subsequent legislation or court decisions.  These
proposed revisions will conform the regulations to FLSA amendments . . . ."  Proposed Rule, 73
Fed. Reg. at 43654.

The complaint also alleges that the NPRM did not announce that DOL was
"contemplating rejecting the established *Kilgore* decision," which DOL had "fully endorsed and
adopted."  Compl. ¶ 27.  The thrust of plaintiffs' argument on summary judgment was that the
agency – arbitrarily and without notice – reversed itself:  first espousing the position that an
"explanation" of the tip credit was not required and then deciding that it was.  Pls.' Mem./Opp. at
13–14.  But the NPRM makes only a brief reference to the *Kilgore* decision in a paragraph that
summarizes the relevant case law:  "Although written notice is frequently provided, it is not
required to satisfy the employer's notice burden.  *Compare Kilgore v. Outback Steakhouse of
Florida, Inc.* . . . with *Pellon v. Business Representation Int'l, Inc.* . . . .  Additionally, while
employees must be 'informed' of the employer's use of the tip credit, the employer need not
'explain' the tip credit.  *See Kilgore* . . . . "  Proposed Rule, 73 Fed. Reg. at 43659.  These
sentences hardly amount to an official embrace of the *Kilgore* decision, and therefore, there was
no basis for plaintiffs' insistence that the agency had "reversed course" when it supposedly
moved away from *Kilgore* in the final rule.  *See* Pls.' Mem./Opp. at 3; Tr. at 39.  There was no
"endorsement" or "adoption" of *Kilgore* at the outset, and indeed, as plaintiffs ultimately
conceded, the final rule doesn't depart from it either.  Tr. at 29.

8       Plaintiffs point to three cases from the D.C. Circuit in which the court found that the
variance between the proposed rule and the final rule was so significant that the notice was
inadequate.  *Kooritzky v. Reich*, 17 F.3d 1509, 1513 (D.C. Cir. 1994); *Donovan*, 757 F.2d at 339;
*Nat'l Mining Ass'n*, 116 F.3d at 531.  But unlike the *Kooritzky* case, where the court determined
that the notice was inadequate because "[s]omething is not a logical outgrowth of nothing," 17
F.3d at 1513, the notice at issue here was much more than nothing.  It adequately framed the
subject of the rulemaking when it stated that it intended to promulgate a rule implementing
FLSA's requirement that employers notify employees of the provisions of the tip credit.
Likewise, the concerns the court expressed about the notices in *Donovan* and *National Mining
Association* do not apply here because the NPRM fully alerted the public that the purpose of the
rulemaking was to promulgate a regulation that implemented the statute.

rulemaking on this issue, expressly requires employers to disclose the very provisions that are set

out in the final rule. Also, a review of the administrative record reflects that the final rule

developed reasonably and logically from the original proposal because – as DOL expressly

explained when it issued the final rule – the rule was modified to address concerns that the

original proposal could not be squared with the statute.  Final Rule, 76 Fed. Reg. at 18843.

> a.  *The final rule flows directly from the announced purpose of the rulemaking.*

The purpose of the rulemaking was "to revise regulations issued pursuant to [FLSA] . . .

that have become out of date because of subsequent legislation or court decisions."  Proposed

Rule, 73 Fed. Reg. at 43654.  DOL stated that the revisions would "conform the regulations to

[the] FLSA amendments," *id*., which required employers to inform their employees about the

provisions of section 3(m).  The agency proposed a rule calling for employers to advise tipped

employees of their intent to take advantage of the credit, and commenters – including

representatives of employers – responded that the proposal did not fulfill its stated goal.

Epstein Becker, which identified itself as a firm that "represented the employer in *Pellon*

*v. Business Representation Int'l, Inc. . . .* one of the leading cases discussed in the proposed

regulations addressing the tip credit," admonished the agency that the proposed regulation

"cannot be reconciled with the statutory language."  A.R. at 426-27.  It observed:

> The proposed [rule] substantially modifies the existing regulation.  These
> modifications are necessary to update the regulation to reflect [the] subsequent
> statutory amendments.  However, the portion of [the] proposed [rule] that
> prescribes the content of the tip credit notice deviates from the statutory language.
> The proposed regulation requires only that the tip credit notice communicate the
> employer's "intent" to use tips to satisfy part of the employer's minimum wage
> obligation.  There is nothing, however, in [section 3(m)] to suggest that the
> employer needs to communicate to its employees its intent to use or not use the
> tip credit.  *Thus, the current version of the proposed regulation imposes content
> requirements for the tip credit notice that are foreign to the statute, and fails to
> require content that is mentioned in statute.*

*Id.* at 427 (emphasis added).   Similarly, the AFL-CIO submitted a comment stating that "the proposed regulation fails to satisfy to [sic] plain language of the statute, which requires not just that the employer 'inform' the employee that it is taking a tip credit, but that 'the employer [inform the employee] of the provisions of this subsection.'"   A.R. at 124 (internal citation omitted) (alteration in original).   Groups representing the employee side also submitted comments along these lines.   NELA, the largest professional membership organization of lawyers who represent employees, commented that the proposed rule failed to call for the disclosure of all of the information required by the statute.   *Id.* at 150-51.   It said that "[i]nterpreting Section 203(m) as requiring full disclosure of all of Section 203(m)'s tip credit requirement is, therefore, clearly within the Department's authority.").   *Id.* at 151.

Based on comments such as these, DOL revised the proposed rule to track more closely the requirements of section 3(m), which was the purpose the agency announced for the rulemaking in the first place.   *See* Final Rule, 76 Fed. Reg. at 18844 ("Accordingly, based on the express provisions of the statute, and the supporting legislative history, the Department agrees with the commenters stating that an employer must inform a tipped employee before it utilizes the tip credit, of the following . . . .").   The Court finds that such a revision "follow[s] logically" from and "reasonably develop[s]" the rule the agency originally proposed.   *Conn. Light & Power*, 673 F.2d at 533.[9]

---

9    Plaintiffs rely on cases from this Circuit to support their argument that the final rule was not the logical outgrowth of the proposed rule.   *See, e.g., City of Waukesha v. EPA*, 320 F.3d 228, 246 (D.C. Cir. 2003); *Small Refiner* 705 F.2d at 549.   As defendants argue, these authorities are not on point because the rulemaking in those cases concerned highly technical and scientific subjects that are not at issue in this case.   In *City of Waukesha*, the D.C. Circuit observed that where technical statutes are involved, "the [logical outgrowth] doctrine must be considered in the context of th[e] specific statute, where its applicability may be somewhat stricter than in the generic APA case."   320 F.3d at 245-46.   Similarly, in *Small Refiner*, the court observed that the additional notice requirements in the Clean Air Act "suggest that Congress intended agency

*b.   The final rule tracks the language of section 3(m).*

While defendants acknowledge that the final rule is more detailed than the proposed rule, Defs.' Mem. at 1, they point out that the five disclosures required by the final rule are derived directly from the statutory text of section 3(m).  Defs.' Reply in Supp. of Mot. to Dismiss, or, in the Alternative, for Summ. J. and Opp. to Pls.' Cross-Mot. for Summ. J. [Dkt. # 26] ("Defs.' Reply") at 12 ("Just as the statute requires an employer to inform a tipped employee of five items before the employer may take the tip credit, so too does DOL's regulation do just that and no more.")  A side-by-side comparison of section 3(m) and the final regulation illustrates this point:

| 29 U.S.C. § 203(m) | 29 CFR § 531.59 |
| --- | --- |
| "In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to –<br><br>(1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996;" | "[A]n employer is not eligible to take the tip credit unless it has informed its tipped employees in advance of the employer's use of the tip credit provisions of section 3(m) of the Act, i.e.:  The amount of the cash wage that is to be paid to the tipped employee by the employer;" |
| "(2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title." | "the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by  the employer[]" |
| "The additional amount on account of tips may not exceed the value of the tips  actually received by an employee." | "which amount may not exceed the value of the tips actually received by the employee[]" |
| "The preceding [two] sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection," | "and that the tip credit shall not apply to any employee who has not been informed of these requirements in this section[]" |
| "and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit | "that all tips received by the tipped employee must be retained by the employee except for a valid  tip  pooling  arrangement  limited  to |

---

notice under the [statute] to be more, not less, extensive than under the APA."  705 F.2d at 550. Because the rulemaking here is a classic, generic APA case, the stricter logical outgrowth test used by the D.C. Circuit in those cases does not apply.

| the pooling of tips among employees who customarily and regularly receive tips." | employees who customarily and regularly receive tips[.]" |
|---|---|

In other words, as plaintiffs concede, Tr. at 29, the final rule does not require employers to do anything other than what they were already obligated to do under section 3(m), which is "inform employees of the provisions of this subsection." 29 U.S.C. § 203(m). [10]

  c. *The purpose of the notice and comment process was served here.*

As noted above, "[t]he whole rationale of notice and comment rests on the expectation that the final rules will be somewhat different and improved from the rules originally proposed by the agency." *Trans-Pac. Freight Conf. of Japan/Korea*, 650 F.2d at 1249. Here, the agency heard from many groups that read the NPRM as an opportunity to weigh in on the proposed form and content of the information to be provided to employees. Organizations speaking on behalf of employees urged the agency to require employers to explain the tip credit requirement, and in some cases, went so far as suggesting that the employers provide a clear written explanation of the tip credit. *See, e.g.*, A.R. at 150–51 (comments from NELA). And comments calling for specificity and clear directives were not limited to the employee side. The U.S. Chamber of Commerce commented that "[t]he Chamber agrees with the DOL's decision to clarify the methods by which notice may be provided, as well as what an employer must communicate to an employee for the notice to be sufficient. As drafted, the Proposed Rule will clearly articulate the required content of the notice, a step that should reduce litigation on this topic." *Id*. at 195–96. Similarly, Littler Mendelsen, the law firm representing plaintiffs in this matter, expressed satisfaction with the rule as originally written: "Littler supports these changes as they will

---

10 The Court notes that the firm now representing the plaintiffs, Littler Mendelson, P.C., stated in its comments to the entire set of proposals that "[m]any of the proposed changes closely track the language of the statute and, thus, should not be controversial." A.R. at 186. The Court agrees that there is little objectionable about a regulation that "closely tracks the statute."

ensure the rules are transparent to both employers and employees." *Id*. at 187.  But it also noted that "[t]he current regulations do not provide sufficient guidance to employees or employers regarding the required notice, thus leading to significant litigation over this issue[.]"  *Id*. (internal citation omitted).  In light of those broadly based comments calling for clarity, the agency added specificity to the regulation.  In the Court's view, the final rule that spells out more specifically what must be disclosed under the statute developed logically and reasonably from the rule that was originally proposed, particularly in light of its stated purpose.

### B.  The Final Rule is not arbitrary and capricious.

Under the APA, a court may set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); *Nat'l Ass'n of Clean Air Agencies v. EPA*, 489 F.3d 1221, 1228 (D.C. Cir. 2007).  Agency action will be upheld if the agency "has considered the relevant factors and articulated a 'rational connection between the facts found and the choice made.'"  *Id.*, quoting *Allied Local & Reg'l Mfrs. Caucus v. EPA*, 215 F.3d 61, 68 (D.C. Cir. 2000).  The review is "[h]ighly deferential" and "presumes the validity of agency action."  *Id.*, citing *AT&T Corp. v. FCC*, 349 F.3d 692, 698 (D.C. Cir. 2003).  The agency may rely on comments submitted during the notice and comment period as justification for the rule, so long as the submissions are examined critically.  *See Nat'l Ass'n of Regulatory Util. Comm'rs v. FCC*, 737 F.2d 1095, 1125 (D.C. Cir. 1984).

Plaintiffs contend that the final rule is arbitrary and capricious "because it conflicts with the DOL's previously announced positions and established case law[.]"  Compl. ¶ 52. Specifically, plaintiffs take issue with the regulation because, in their view, it conflicts with *Kilgore*, 160 F.3d 294, which they characterize as "established and settled law, followed by all or

the majority of federal courts [that] have considered the issue of adequate notice under Section 3(m)."  *Id*. ¶ 54.

In justifying the final rule, DOL stated: "The Department has concluded that notice of the specific provisions of [section] 3(m) is required to adequately inform the employee of the requirements of the tip credit."  Final Rule, 76 Fed. Reg. at 18844.  Because DOL "considered the relevant factors and articulated a 'rational connection between the facts found and the choice made,'" the Court finds that the final rule is not arbitrary and capricious.  *Nat'l Ass'n of Clean Air Agencie*s, 489 F.3d at 392, quoting *Allied Local & Reg'l Mfrs. Caucus*, 215 F.3d at 68.

First and foremost, the agency's conclusion is consistent with – and probably compelled by – the statute.  *See* Final Rule, 76 Fed. Reg. at 18844 ("Accordingly, *based on the express provisions of the statute* . . . the Department agrees with the commenters stating that an employer must inform a tipped employee before it utilizes tip credit, of the following. . . . ") (emphasis added).

 Second, it is clear from the announcement of the final rule that DOL based its conclusion that notice of the specific provisions of section 3(m) was required on comments that were submitted during the notice and comment period.  *Id*. at 18842.  DOL noted that some commenters, such as the National Employment Law Project ("NELP"), objected to the proposed requirement that employers only had to inform employees orally of the tip credit but did not have to explain it to them or provide anything in writing.  *Id*.  NELP pointed to the legislative history of section 3(m), which includes a statement that "the employer must explain the tip provision of [FLSA] to the employee and that all tips received by such employee must be retained by the employee," as evidence that Congress intended to require employers to do more than simply inform employees, even if it that is all the statute says.  *Id.*, citing S. Rep. 93-690 at 43 (1974).

NELP also asserted that many tipped employees are "low-wage and immigrant employees working in high-violation industries, and they do not understand the complicated tip credit rules." *Id*. In light of this, the group advocated for "requiring employers to provide a clear written explanation to employees" because it "would enable them to protect themselves from litigation claiming that they failed to provide adequate notice and therefore cannot take the tip credit." *Id*. at 18843. DOL noted that groups like the AFL-CIO and Epstein Becker suggested that employers be required not only to tell employees that the employer will be using the tip credit but also that they inform employees of the specific provisions of section 3(m). *Id*. Several commenters, including AFL-CIO, NELA, and Bruckner Burch PLLC, advocated that DOL should not follow the Sixth Circuit's decision in *Kilgore*, 160 F.3d 294, because "it was wrongly decided on the notice issue in that it did not take into account the legislative history or the statutory language [of FLSA] requiring employees to be informed of the provisions of section 3(m)." *Id*. These commenters asserted that the regulation should provide a sample notice that employers could follow when informing employees. *Id*.

DOL also took note of comments submitted from the management side, including the U.S. Chamber of Commerce and Littler Mendelson. *Id*. These groups agreed with the rule as proposed, but even they stressed the importance of clarity.[11] Littler Mendelson called the proposal a "positive step in clarifying employer obligations and, thus it should reduce the litigation on this issue by clearly articulating the required content of the notice." *Id*. And, consistent with the position taken by advocates for employers, the agency rejected the call of

---

11    Plaintiffs argue there were no comments filed by *employer* representatives that would suggest that the NPRM adequately notified interested parties of what the final rule would require. Pls.' Reply Mem. in Supp. of Cross-Mot. for Summ. J. [Dkt. # 28] at 4. The record submitted to the Court belies this claim. *See* A.R. at 427 (comments from Epstein Becker asserting that that the proposed regulation "cannot be reconciled with the statutory language").

employee groups for a requirement of notice to employees in writing.   *Id*. ("Although the Department is not requiring in this rule that the employer 'inform' its tipped employees of section 3(m)'s requirements in writing, employers may wish to do so, since a physical document would, if the notice is adequate, permit employers to document that they have met the requirements[.]")   It is clear from the record presented to the Court that DOL reviewed and considered the diverse comments it received and that the final rule was based on the comments submitted to the agency.

Plaintiffs contend in their papers that the rule is arbitrary and capricious because it is contrary to prevailing federal court decisions.   Pls.' Mem./Opp. at 20-21, citing *Kilgore*, 160 F.3d at 298; *Martin*, 969 F.2d at 1322–23; *Reich*, 28 F.3d at 403.   But plaintiffs have failed to point to any authority that would suggest that a federal agency is bound to promulgate rules that are consistent with decisions issued by particular federal appellate courts.   Even if plaintiffs were correct that *Kilgore* represents the prevailing interpretation of section 3(m), *see* Pls.' Reply at 5, DOL was under no obligation to adopt the holding if, in its reasonable judgment, it determined that a different approach was more appropriate.   More important, the final rule was based directly on the statute, which is what is supposed to govern agency action.

And, in any event, the final rule did not vary from *Kilgore.* The theory plaintiffs advanced when briefing the matter was that *Kilgore* held that employers are not required to "explain" the tip credit; the statute simply requires them to "inform" employees about the law.   Pls.' Mem./Opp. at 20.   But the final rule does no more than that, and indeed, plaintiffs conceded

that point at oral argument.  Tr. at 29 ("THE COURT:  Where does the reg[ulation] itself stray beyond information into explanation? . . . [COUNSEL FOR PLAINTIFFS]:  It does not."). [12]

Given the express terms of the statute, DOL's thorough consideration of the comments submitted in this case, and the deferential standard of review that applies here, the Court concludes that the final rule promulgated by DOL was not arbitrary and capricious.

### C. DOL did not violate the APA by certifying that the rule will not have a significant economic impact on small entities.

Plaintiffs argue that defendants violated the APA by failing to conduct a regulatory flexibility analysis in connection with the final rule.  Pls.' Mem./Opp. at 22–26.  Under the Regulatory Flexibility Act ("RFA"), when an agency proposes or promulgates a new rule, it is required to conduct a "regulatory flexibility analysis . . . describ[ing] the impact of the . . . rule on small entities."  5 U.S.C. § 603(a), 604.  However, the statute plainly states that no such analysis is required "if the head of the agency certifies that the rule will not . . . have a significant economic impact on a substantial number of small entities."  *Id*. § 605(b).

In announcing the final rule, DOL made the requisite certification:

[B]ecause the final rule will not impose any measurable costs on employers, both large and small entities, the Department has determined that it would not have a significant economic impact on a substantial number of small entities within the meaning of the Regulatory Flexibility Act . . . .  The Department certified to the Chief Counsel for Advocacy to this effect at the time the NPRM was published. The Department received no contrary comments that questioned the Department's

---

12      Along the same lines, plaintiffs initially contended that the rule was arbitrary and capricious because there was a "complete lack of support" for a regulation that would require employers to "explain" the tip credit.  Pls.' Mem./Opp. at 21.  Plaintiffs complained that the only support for a final rule calling for an explanation was a "snippet" from FLSA's legislative history.  *Id*. at 20.  But plaintiffs' concession that the final rule "informs" but does not "explain" marks the end of this argument.  And the final rule was not merely based on one sentence in the legislative history:  there is no question that the final rule is directly derived from the language of the statute itself, and it was supported by a number of the comments submitted to DOL during the notice and comment period.

> analysis or conclusions in this regard.  Consequently, the Department certifies
> once again pursuant to 5 U.S.C. [§] 604 that the revisions being implemented in
> connection with promulgating this final rule will not have a significant economic
> impact on a substantial number of small entities.  Accordingly, the Department
> need not prepare a regulatory flexibility analysis.

Final Rule, 76 Fed. Reg. at 18853.  Plaintiffs contend that this certification was arbitrary and

capricious because it was made without the benefit of comments about the compliance costs

associated with the new rule.  Pls.' Mem./Opp. at 25 (noting that there is nothing in the

administrative record indicating that DOL "considered the substantial costs to small businesses

of providing the required notice or the costs of additional recordkeeping" or that DOL

"contemplated the potential economic exposure to many small businesses to regulatory

violations and enforcement actions.")  Plaintiffs submit that if they had had proper notice of the

rule prior to its promulgation, they would have "overwhelmed the agency with information about

the cost behind this proposal."  Tr. at 20.

But the original rule would have required employers to inform employees of their

intention to take the tip credit, so it is difficult to understand why the final rule's requirement that

employers inform employees of the additional requirements of section 3(m) would impose a

significant financial burden.  After all, employers are given the opportunity to choose whether to

inform employees by distributing a written policy, as was done in *Kilgore,* or whether to advise

them orally.  In response to the Court's questions on this point at the hearing, plaintiffs explained

that the final rule is particularly burdensome because it requires employers to inform employees

whenever the tip credit changes, so a poster or one-time written information sheet will not do.

Tr. at 37 (contending that "our clients and really all restaurant employers have been deprived of

the opportunity to explain to the Department and show the Department the cost associated with

[the proposed] rule . . . ").  But the regulations in existence prior to the promulgation of the final

rule already required successive communications with employees when the tip credit changed. 29 C.F.R § 516.28(a)(3) (2011) (requiring employers to inform employees in writing when the amount per hour that the employer takes as a tip credit changes).  Employers did not call for this requirement to be changed in their comments, so plaintiffs' argument has little force here.

Furthermore, the D.C. Circuit has held that the requirements of the RFA are "purely procedural."  *Nat'l Tel. Coop. Ass'n v. FCC*, 563 F.3d 536, 540 (D.C. Cir. 2009), citing *U.S. Cellular Corp. v. FCC*, 254 F.3d 78, 88 (D.C. Cir. 2001).  The court reasoned that although the RFA "directs agencies to state, summarize, and describe, the Act in and of itself imposes no substantive constraint on agency decision-making." *Id.*  Here, DOL complied with the requirements of the RFA when it concluded that no regulatory flexibility analysis was necessary because the rule would not have an impact on a substantial number of small entities.  Final Rule, 76 Fed. Reg. at 18853.

## IV.    CONCLUSION

For the reasons set forth above, the Court will deny plaintiffs' cross motion for summary judgment [Dkt. # 24] and will grant defendants' motion to dismiss, or, in the alternative for summary judgment [Dkt. # 15].  Accordingly, judgment will be entered for defendant on Counts I, II, and IV.  Count III will be dismissed as conceded.  A separate order will issue.


AMY BERMAN JACKSON
United States District Judge


DATE:  May 29, 2012